[S. F. No. 3120.  In Bank.—December 5, 1905.]

# JAMES CLYNE, Appellant and Respondent, v. EASTON, ELDRIDGE & CO., Respondent and Appellant.

ATTACHMENT—STRICT COMPLIANCE WITH LAW REQUIRED.—Proceedings by attachment are special and statutory, and the provisions of the statute must be strictly followed in order to acquire any rights thereunder.

ID.—GARNISHMENT — "MONEYS, CREDITS, AND EFFECTS" — "INDEBTEDNESS" NOT INCLUDED.—A notice of garnishment under a writ of attachment describing only "moneys, credits, and effects of said defendants, or either of them," as being attached does not include any "indebtedness" due from the garnishee to one of the defendants resulting from a sale of lands for such defendant, nor create any liability therefor to the attaching creditor.

ID.—DEBT BARRED BY STATUTE—GARNISHMENT UNDER EXECUTION—LIABILITY NOT CREATED.—Where the debt to such defendant was barred by the statute of limitations prior to a garnishment thereof under execution in favor of the attaching creditor as a judgment creditor of such defendant, such garnishment under execution could create no liability of the garnishee to such judgment creditor.

ID.—ACTION AGAINST GARNISHEE—ADMISSION NOT CONCLUSIVE—ERRONEOUS OPINION AS TO EFFECT OF GARNISHMENT.—In an action against the garnishee upon the notice of attachment an admission of the defendant, consisting of a pencil entry after service of the notice made in defendant's ledger by a bookkeeper on the margin of defendant's account with an attachment debtor, showing that it was "attached" on the day of service, and the statement of the president of defendant corporation to such debtor that the debt was attached as an excuse for refusing further payments, though evidence of such attachment, is not conclusive, and may have been nothing more than the expression of an erroneous opinion as to the effect of the notice of attachment served by the sheriff.

ID.—ESTOPPEL AS AGAINST DEBTOR—REFUSAL OF PAYMENTS—ATTACHING CREDITOR NOT AIDED.—Any estoppel which may exist against the garnishee in favor of the attachment-debtor, by refusal of further payments thereto on the ground that the debt had been attached, to deny the efficacy of the notice of garnishment, cannot avail the plaintiff as attaching creditor who relies upon an attachment in his favor which did not include the debt.

ID.—DEBTOR'S CONCESSION OF VALIDITY OF ATTACHMENT—PLEA OF BAR OF STATUTE NOT AFFECTED.—Where the answer of the defendant, besides denying both the attachment and the debt, pleaded the bar of the statute of limitations, he cannot be deprived of his valuable right to plead the statute, as against the plaintiff, on the ground

that the attachment debtor, whose interest was adverse, had conceded the validity of the attachment. If the debt was not attached, the plea of the statute is a perfect defense to the action.

ID.—OBJECTION TO SHERIFF'S RETURN—IRRELEVANCE.—The defendant's failure to object to the sheriff's return of service of the writ of attachment showing that the debt was not attached before it was introduced in evidence was immaterial; and where issue was joined upon the alleged attachment of the debt, an objection that the return was irrelevant was sufficient.

ID. — ATTACHMENT OF DEBT — DENIAL OF INDEBTEDNESS — RUNNING OF STATUTE OF LIMITATIONS—CONSTRUCTION OF CODE.—Under section 544 of the Code of Civil Procedure it is only where a garnishee under an attachment admits a liability that the statute of limitations does not run in his favor against the attaching creditor; but in case of the attachment of an accrued debt, any liability upon which is disputed by the garnishee, the statute of limitations, which had begun to run in favor of the garnishee against the attachment debtor, continues to run; and when the debt is barred against such debtor before the liability of the garnishee is sought to be enforced by the attaching creditor, the right of the latter to maintain an action against the garnishee is also barred.

ID.—CONTRACT LIABILITY NOT CHANGED — CONTINGENT TRANSFER.—The contract liability between the garnishee and the attachment-debtor is not changed into a statutory liability by the garnishment. The sole effect of the garnishment is to work a contingent transfer of the alleged indebtedness from the creditor to the garnisher without any change in the nature of the liability.

ID.—REMEDY OF ATTACHING CREDITOR—PARTIES.—The attaching creditor has a remedy before judgment in the attachment suit to enforce the lien of the attachment against the garnishee, making the attachment debtor a necessary party; and the judgment therein would afford the garnishee complete protection.

CONTRACT BY BROKER TO SELL LAND — SUPERSEDING AGREEMENT — CONSTRUCTION.—Where a contract by a broker to sell land for a commission was superseded by the express terms of a second agreement, which gave the broker all excess received over a specified sum to be paid to the owner after paying all mortgages, as also all crop returns now in hand or due on account of crops growing on the land, "the crop returns now in hand" will be construed to mean the balance of rents collected over and above its expenditures to the date of the second agreement; and no expense incurred by the broker under the former contract, nor any payments made to the owner thereunder, can be charged as a credit against the indebtedness to the owner arising upon a subsequent sale of the land under the superseding agreement.

ID.—CONVEYANCE TO BROKER'S CLERK—IMPLIED CONTRACT.—Where the broker, under the second agreement, procured a conveyance of the land from the owner to the broker's clerk, the broker thereby became

bound by an implied agreement to extinguish the mortgages with accrued interest, and to pay the owner the sum agreed upon, if it does not appear that the contract was further modified by subsequent agreement.

ID.—ERROR IN DISALLOWANCE OF ITEMS.—Where error appears in the disallowance of items to the broker arising under the second contract which affects the amount of the judgment, an order denying a new trial of issues involving such amount must be reversed.

APPEAL by plaintiff from an order of the Superior Court of the City and County of San Francisco granting a new trial of certain issues to defendant, and by defendant from an order refusing a new trial of other issues. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

R. E. Houghton, and Houghton & Houghton, for Plaintiff, Appellant and Respondent.

Jesse W. Lilienthal, and Frohman & Jacobs, for Defendant, Respondent and Appellant.

BEATTY, C. J.—The trial of this cause in the superior court resulted in a judgment for the plaintiff. Defendant moved for a new trial, and its motion was granted as to some of the issues, but denied as to the others. Both parties appeal—plaintiff from that part of the order which directs a new trial of the issues as to which the findings are vacated, and defendant from the part which denies a new trial of the remaining issues. The record is of course the same on both appeals, and they have been submitted together.

The salient facts of the case are that the defendant, a California corporation, prior to the seventh day of June, 1893, had written authority from Linnie W. Goodyear and her husband, H. C. Goodyear, to sell on commission 1,244.31 acres of land belonging to Mrs. Goodyear. The land was heavily encumbered by a first mortgage to the German Bank and by a second mortgage to one Kahn. The authority to sell provided for a sale of the land in separate tracts at a fixed minimum of price, and defendant was to receive a commission of two and one half per cent of the price so fixed, and also one half of any excess received from sales of the property over and above the fixed price plus the expenses of surveying, platting, and advertising, which expenses it is clear

from the whole tenor of the writing were to be borne by the defendant as a part of its undertaking to make the sales. The effort to dispose of the land upon the terms of this authorization having failed, it was superseded on the 7th of June, 1893, by a new one in the following terms:—

"Whereas, on the 25th day of January, 1893, the undersigned entered into a contract with Easton, Eldridge & Company for the sale of certain real estate in the county of Solano, state of California; and whereas, owing to the condition of the mortgages, it is absolutely necessary to sell the land as a whole: Now, therefore, it is agreed, and Easton, Eldridge & Company are hereby authorized to sell the land, viz.: 1,244 and 31-100 acres, more or less, for such sum as shall liquidate the present mortgage indebtedness, and in addition pay us the sum of twelve thousand dollars, and all excess received over and above that, as also all crop returns now in hand or due on account of crops growing on the land for the year 1893, shall belong to the said Easton, Eldridge & Company, and shall be held by them as a part of their compensation under this agreement of sale. Witness our hands this 7th day of June, A. D. 1893. [Signed] Mrs. H. C. GOODYEAR. H. C. GOODYEAR. Witness: [Signed] GEO. EASTON."

Acting under this authority and some alleged oral modifications thereof, the defendant during the year 1893 sold the entire tract in two parcels, and out of the proceeds satisfied and discharged all the encumbrances thereon, including the mortgages above mentioned and some other liens. The twelve thousand dollars claimed by the Goodyears, however, had not been paid in full, and there was a dispute between them and the defendant as to the balance remaining due upon the account, when, on the tenth day of August, 1894, the plaintiff in this action commenced an attachment suit in Solano County against Mr. and Mrs. Goodyear to recover, with interest, the sum of $6,805 due upon their promissory notes. Summons and attachment were duly issued in said suit, and on August 11th the attachment was placed in the hands of the sheriff of San Francisco for service. No return was made thereon until March 29, 1897,—at which date the following paper was filed in the office of the county clerk of Solano County:—

"Office of the Sheriff of the City and County of San Francisco. By virtue of the annexed writ, I duly attach all moneys,

credits, and effects belonging to the defendants named in said writ, or to either of them, by serving upon each of the hereinafter named parties, personally, in the city and county of San Francisco, at the times set opposite their respective names, a copy of said writ, with a notice in writing notifying each of said parties, respectively, that such moneys, credits, and effects of said defendants, or either of them, was attached, and not to pay over or transfer the same to any one but myself. Statement demanded. The answers were as set opposite their respective names. Names of the parties served as aforesaid: Easton . & Eldridge & Co., through G. Easton (Sec.); time of service, Aug. 11th, 1894, at 11:00 o'clock a. m.; answers, 'No funds.' Henry B. Shaw, Aug, 11th, 1894, at 11:15 a. m.; no answer. [Signed] JOHN J. McDADE, Sheriff, by J. J. McTIEMAN, Deputy Sheriff."

After said writ of attachment was so served upon the defendant herein, on the eleventh day of August, 1894, an entry was made in the margin of the ledger account, kept by said Easton, Eldridge & Co., in connection with the transactions under the contracts above mentioned, as follows: "Attached August 11, 1894." And thereafter said Easton, Eldridge & Co. refused to make further payments on account of such transactions to H. C. Goodyear, or Linnie W. Goodyear, giving as the reason for such refusal that it had been enjoined by the courts from paying over any more money. In the mean time Clyne had recovered a judgment in his attachment suit against the Goodyears for $7,532, with accruing interest. The date of said judgment was December 13, 1895, but execution thereon was not issued until June 28, 1897. This writ was served on the defendant herein on July 15, 1897. In response to the accompanying notice and demand, defendant denied any indebtedness to the Goodyears; and subsequently, upon supplementary proceedings duly taken, appeared by its president before a referee appointed by the superior court of Solano County, where it again denied all indebtedness to the Goodyears exceeding fifty dollars, denied possession of any of their property, and also pleaded the statute of limitations (Code Civ. Proc., sec. 339, subd. 1) as a separate defense to any claim in their behalf. Upon the coming in of the referee's report to that effect the court made an order in the case of *Clyne* v. *Goodyear* authorizing

the institution of this action for the recovery of the alleged indebtedness of defendant to the Goodyears at the date of the attachment in said suit. In pursuance of this order the original complaint was filed on the following day, July 30, 1897, but the case was not tried until the year 1899, and the pleadings as finally amended were filed after the trial. In his second amended complaint the plaintiff alleges, among other things, that on the eleventh day of August, 1894, when his writ of attachment in the action of *Clyne* v. *Goodyear* was served on the defendant corporation, it was indebted to the Goodyears in the sum of $6,910.28, and that said debt was attached by the service of said writ. The defendant by its answer to said second amended complaint denied that the sheriff attached any debt due to the Goodyears. It also denied the existence of any debt at the date of the attachment, and along with other separate defenses (account stated and laches) pleaded the statute of limitations (Code Civ. Proc., secs. 312, 325, and 339, subd. 1) in bar of the action. Upon these and other material issues the findings were adverse to the defendant.

In disposing of the plaintiff's appeal we have to consider only the particular issues to which the order granting a new trial was limited, and which relate exclusively to the question whether the debt of the defendant to Mrs. Goodyear was really attached in August, 1894, as alleged by plaintiff and denied by defendant. These issues vitally affect the plea of the statute of limitations. For whatever may have been the amount of defendant's indebtedness to Mrs. Goodyear resulting from the sale of her lands, it is certain that it accrued prior to the alleged garnishment on August 11, 1894, and it is conceded that an action for its recovery by her would have been barred by subdivision 1 of section 339 of the Code of Civil Procedure within two years from that date. It is also conceded that there could have been no liability of the defendant to any creditor of the Goodyears by virtue of an attachment or execution levied after the debt had become barred as to them. The appeal of the plaintiff therefore must fail unless the evidence in the case shows without substantial conflict that the debt was attached as alleged. The appellant to sustain his contention upon this point relies upon two items of evidence: 1. The return of the sheriff above quoted;

and 2. An admission of the fact by the defendant under circumstances estopping them now to deny it.   As to the first item, it will be observed that the notice served with copy of the writ made no mention of debt or indebtedness specifically, and had no application to the indebtedness of the defendant unless it was included in the more general term "effects." The contention of the plaintiff is that the statute, being remedial, should be liberally construed for the advancement of the remedy, and that a notice of attachment of credits and effects should be held a sufficient garnishment of a debt.   The defendant cites in opposition to this view the cases in which it has been held by this court that proceedings by attachment being special and statutory, the provisions of the statute must be strictly followed in order to acquire any rights thereunder: (*Gow* v. *Marshall*, 90 Cal. 567, [27 Pac. 422], and cases there cited; *Rudolph* v. *Saunders*, 111 Cal. 233, [43 Pac. 619]; *Beltaire* v. *Rosenberg*, 129 Cal. 164, [61 Pac. 916].)   In view of these authorities, it cannot be doubted that the established rule in this state is to exact a strict compliance with the law, and that rule was applied in *Gow* v. *Marshall* to a case almost exactly the counterpart of this.   There the notice of attachment mentioned only credits, and it was held, upon a critical examination of the various sections of the code relating to this matter, and upon very satisfactory reasoning, that the attachment created no liability on the part of the garnishee for a debt due to the defendant in the attachment suit. The only difference between that case and this is that while that notice of attachment mentioned credits only, the notice in this case also contained the word "effects."   But this difference would seem to be immaterial, for both Rood (on Garnishment) and Shinn (on Attachment) agree that the attachment and garnishment laws make a fundamental difference between custodians of the debtor's property, which includes his effects, and his debtors.   (Rood on Garnishment, sec. 50; Shinn on Attachment, sec. 600.)   In the section last cited it is said: "The liability of a person to be charged as garnishee on the ground that he has property, money, or chattels, credits, and effects in his hands or under his control, is distinct from his liability on the ground of indebtedness to the principal defendant, and when process is issued on affidavit specifying one of these grounds only the garnishee

cannot be charged with liability on the other ground." Of course, these writers were referring more particularly to the proceedings under the laws of other states, regulating what is there variously denominated garnishment process or trustee process, but those proceedings, though differing in detail from our proceeding by attachment, are so far analogous as to make the distinction there recognized between the liability of a debtor and of a custodian of goods or effects, a safe precedent here. We think that upon this view of the matter it must be held that the sheriff's return, so far from proving an attachment of the debt of defendant to Mrs. Goodyear, must, upon the presumption that it stated the truth, be regarded as evidence, and very persuasive evidence, that the debt was not attached.

As to the admission of defendant, consisting of a pencil entry by one of its bookkeepers on the margin of the Goodyear account in defendant's ledger, and of the statement of its president that the debt was attached as an excuse for refusing further payments, that certainly was evidence that the debt had been attached; but it was not conclusive evidence. It may have been nothing more than the expression of an erroneous opinion as to the effect of the service of the notice which the sheriff says he served. As to the argument that the defendant, by refusing further payments to the Goodyears, upon the ground that the debt had been attached, and thereby securing an advantage to itself at their expense, is now estopped to deny the efficacy of the notice, it may be said that in a conceivable case these facts might work an estoppel in favor of the Goodyears; but it is not apparent how such estoppel can avail this plaintiff in view of the facts appearing in this record. A great deal of the argument of appellant on this branch of the case is devoted to the proposition that the defendant has no concern in disputing the validity of an attachment the regularity of which has at all times been conceded by the Goodyears. This argument ignores the fact that the defendant denies any indebtedness to the Goodyears, and that an action by them is barred by the statute of limitations. The right to interpose this plea is a valuable right of which the defendant cannot be deprived by the admission of a third party, and especially of a party whose interest is adverse. If the debt was not attached, the

plea of the statute is a perfect defense to the action, and for the purpose of that defense the defendant is interested and deeply concerned in contesting the issue. The Goodyears, on the other hand, are interested in having it established that the debt was attached; for if so, and if, as contended, the service of the writ stopped the running of the statute in favor of the plaintiff, he may now recover the debt, and what he recovers will satisfy *pro tanto* his judgment as against the Goodyears to their manifest advantage.

The plaintiff urges still another objection to the right of defendant to question the attachment of the debt. It is said that no objection to the sheriff's return was ever made prior to the motion for a new trial, and cases are cited in which it has been held that a garnishee waives all objections to the sheriff's return which he does not make when he appears, and other cases which deny his right to interpose technical objections to the mode of service of the writ. These cases are not in point, because they arose under the laws regulating trustee process and garnishee process in other jurisdictions where the garnishee is required by the process to appear in the action and answer to the court. Under our attachment law a garnishee is not required and has no right to appear in the action. The only answer he makes is to the sheriff at the time of the service of the writ, and that relates only to the property actually attached which he has in his possession or under his control. He has nothing to do with the return of the writ, unless it should be false in some particular which would subject him to a liability beyond that warranted by the facts. In this case the defendant does not object to the return. On the contrary, it relies on the return as containing a true statement of what the sheriff did,—i. e. that he attached credits and effects, but did not attach the debts. Defendant's real objection was made in the only manner and at the earliest time it could be made. Its answer to the original complaint is not in the transcript, but by the amended pleadings the issue as to the attachment of the debt is distinctly raised by allegation on one side and denial on the other. And at the trial, when the sheriff's return of the writ was offered in evidence, defendant objected that it was irrelevant. It is said that this was not the proper objection; that the real objection to the return, if any, was that it was

incompetent. But this is not so. Conceding that the evidence may have been incompetent, that was an objection which the defendant could waive, as it did by failing to make it, but this waiver made the objection of irrelevancy all the more pointed,—made it mean, in other words, that, waiving all other objections, this return has no tendency to prove an attachment of the debt. The present position of the defendant as to this matter is therefore the same position it has maintained from the beginning, and it follows from what has been said, that the part of the order of the superior court from which the plaintiff has appealed must be affirmed.

This conclusion, however, does not dispose of all the questions arising upon the plaintiff's appeal, for the defendant contends (and in view of the further proceedings involved in the order for a new trial, the question cannot be left open) that whether the debt of defendant to the Goodyears was or was not attached in August, 1894,—that even conceding the efficacy of the attachment in that respect,—the order granting a new trial should still be affirmed, upon the more radical ground that this plaintiff's cause of action was barred by the same lapse of time that barred an action by the Goodyears themselves; or, in other words, that the running of the statute of limitations in favor of a debtor is not interrupted by making him a garnishee. This is really the most important, as it is the most difficult, question in the case; for its determination in favor of. respondent would seem to put an end to the present controversy, and however it may be determined our conclusion will remain a precedent of vital importance for future cases. The plaintiff claims that this question (if since the adoption of the Civil Practice Act it has ever been a question) was set at rest by the decision of Department Two of this court in *Carter* v. *Los Angeles National Bank*, 116 Cal. 374, [48 Pac. 332]. The code provision relied on is contained in section 544 of the Code of Civil Procedure, which reads as follows: "All persons having in their possession or under their control any credits or other personal property belonging to the defendant, or owing any debts to the defendant, at the time of service upon them of a copy of the writ and notice, as provided in the last two sections, shall be, unless such property be delivered up or transferred, or such

debts be paid to the sheriff, liable to the plaintiff for the amount of such credits, property, or debts, until the attachment be discharged, or any judgment recovered by him be satisfied.'' The construction which the plaintiff contends this section requires, and which he says this court has adopted, is that the liability of a garnishee to the defendant in an attachment suit—such as it is when the writ is served—is never barred as to the plaintiff in the attachment. If this be so, it must be conceded that it puts a garnishee at a great disadvantage as compared with other alleged debtors, and this without any fault or complicity on his part. Though the alleged claim of the defendant in the attachment may be barred the day after the garnishment, he nevertheless remains liable to an action by the garnisher on the same claim as long as he holds an unsatisfied judgment against the defendant in the attachment. This is the conclusion to which a literal reading of the statute inevitably leads, and it admits of no qualification or compromise. A conclusion so fraught with injustice to innocent parties may well induce a doubt whether the language of the statute is to be taken literally; and in considering whether it will bear a more liberal and equitable construction we find nothing in Judge Temple's opinion in *Carter* v. *Los Angeles National Bank,* 116 Cal. 374, [48 Pac. 332], to sustain the opposite view. All that he says touching this matter is contained in a single paragraph at the close of the opinion: ''As to the statute of limitations, if the garnishee is entitled to the plea as against the defendant in the attachment suit, he can plead it. The liability created by the garnishment is never barred. Of course, the garnishee can plead any defense he would have against his creditor, and also that the attaching creditor's debt has been satisfied, or that he failed to recover judgment, or that it had been reversed or has been barred. These last defenses might also have been made by the intervener. But the liability which arises from the attachment, as something entirely distinct from these, is not barred.'' This language was used in deciding a case in which the claim of the attachment debtor against the garnishee was not barred at the commencement of the action, and was an answer to the contention of an intervening claimant of the fund in the hands of the garnishee that the liability created by the garnishment

was barred. This being the case, it was quite natural for the court to say that the liability created by the garnishment, as something distinct from the original liability of the garnishee, is never barred.

But in making this entirely correct statement, in response to the claim there asserted by the intervener (and not by the garnishee, against whom an action by his creditor was not barred), it will be seen that the court took pains to add the qualification that of course the garnishee could plead any defense against the garnisher that could be pleaded against his creditor. So far from sustaining the position of plaintiff, this decision is distinctly adverse. The cases cited by plaintiff from other jurisdictions afford us no aid in construing our statute. Generally they sustain the statement in Drake on Attachment (sec. 672) to the effect that in his action against the garnishee the garnisher can claim nothing which the original creditor could not claim if suing in his own behalf; and upon this principle it would seem to follow that the plea of the statute might be interposed against the garnisher whenever it could be interposed against the original creditor. In none of the cases to which we have been cited do we find anything in conflict with this view. Of course, in those jurisdictions where service of trustee or garnishee process has the effect of making the trustee or garnishee a party to the action the statute ceases to run in his favor after service, because the claim against him is then in suit. In this dearth of authority upon the particular point in controversy we have left for consideration only the language of the statute (Code Civ. Proc., sec. 544), as affected by cognate provisions of the codes. We think, in view of the general provisions of the statute of limitations (Code Civ. Proc., sec. 312 et seq.), and of its conceded policy, the legislature could not have intended to exclude from its equal benefit every person who happens to be made a garnishee in an action between other parties, and that the section in question was intended to apply to those cases only in which the garnishee admits his indebtedness to the defendant in the attachment or admits his possession or control of specific property of the defendant. In such case he can discharge his admitted obligation by paying the debt to the sheriff or delivering possession of the defendant's property. This it is not only his

privilege but his duty to do, but if he chooses to retain possession of the defendant's property, or to withhold payment of a sum admitted to be due, he thereby makes himself by his own act the trustee of a fund or of specific property *in custodia legis,* and in that character liable to account to the party entitled whenever called upon. The language of the section, no less than the reason for making the distinction, lends support to this view; for, according to its terms, the continued liability of the garnishee is made a consequence of his failure to pay his debt or deliver the defendant's property. But the alternative of accepting such liability or delivering property or making payment is not open to a garnishee who denies any indebtedness or disputes the defendant's title to any property in his possession or control, and when he takes that position in response to the writ and notice—as the defendant in this action did—his right to invoke the protection of the limitations act would seem to stand on the same plane with that of any other alleged debtor, and such is our opinion. As an alternative position to the claim that the liability of the garnishee is never barred, the plaintiff argues that by the garnishment a new statutory liability is created, upon which an action may be commenced at any time within three years after it accrues. (Code Civ. Proc., sec. 338.) But this position cannot be sustained. A contract liability is not changed or converted by garnishment into another sort of liability. The sole effect of the garnishment is to work a contingent transfer of the alleged indebtedness from the creditor to the garnisher without any change in the nature of the liability.

Our conclusion upon the whole matter is that whether or not the writ and notice served on defendant in the suit of *Clyne* v. *Goodyear* effected a garnishment of its indebtedness to them, or either of them, the statute which had begun to run in their favor continued to run, and that the right to maintain this action was barred before the original complaint was filed. The only inconvenience that could result from this construction of the statute is this: It might happen, and in many cases no doubt would happen, that a judgment in favor of an attaching creditor could not be obtained until after the statute had barred an action against the garnishee; and if the right of the attaching creditor to sue the garnishee

does not accrue until he gets a judgment against the defendant in the attachment suit he would be deprived of all benefit of the statutory remedy unless the latter chose to commence an action for his benefit. The point does not call for decision in this case, but, in answer to this argument against our construction of section 544, it may be said that there appears to be no very weighty reason for holding that the garnisher might not commence an action against the garnishee for the protection of his contingent interest in the debt or property attached before he obtains a judgment. It is certain that after garnishment the claim of the original creditor against the garnishee itself becomes contingent, and yet we have held that his right of action is not suspended. (*Glugermovich* v. *Zicovich,* 113 Cal. 64, [45 Pac. 174].) If his creditor may sue upon a contingent liability, we see no reason for holding that the garnishee could object to a suit by the garnisher upon the same sort of liability upon the same obligation. The right being the same, the remedy should be the same; and the right being admitted, the general provisions of the code should be sufficient to supply a remedy. In any action by the garnisher against the garnishee before judgment in the attachment suit the creditor would of course be a necessary party, and the judgment would afford the garnishee complete protection. (*Glugermovich* v. *Zicovich,* 113 Cal. 64, [45 Pac. 174].) Upon this view of the law the statutory remedy is fully preserved without any impairment of the right of garnishees, and a view which gives full effect to the remedy at the same time that it preserves the rights of all parties should commend itself to the favorable consideration of the courts. But notwithstanding our conclusion, that upon any view of the facts as disclosed by the record before us the action was barred, we cannot on this appeal, or on the defendant's appeal, remand the cause with directions to the superior court to enter a judgment for the defendant. All we can deal with is the order granting in part and denying in part the motion for a new trial.

It seems unnecessary, however, in view of the points decided, to enter upon any detailed discussion of the questions presented by the defendant's appeal. This involves a construction of the original and substituted authorizations to defendant to sell the land, and the amount and character of

its indebtedness or liability to the Goodyears upon the completion of the sale, and the credits to which it was entitled for payments to and ·on account of Mrs. Goodyear. The second agreement, dated June 7, 1893, by its express terms, supersedes the former agreement under which the defendant had incurred all the items of expense charged in its accounts up to that date, and we construe the words "all crop returns now in hand" to mean the balance of rents theretofore collected by defendant over and above its expenditures to that date. This balance and any further collections for the year 1893 were to belong to defendant as part of any surplus of proceeds of sale of the land over and above the sum necessary to pay off the existing encumbrances on the land (including the interest necessarily· accruing during the reasonable time required for effecting the sale, which the parties must have taken into consideration in making their agreement) and the twelve thousand dollars to be paid to Mrs. Goodyear. Upon this construction no expense incurred by defendant, nor any payment to or on account of Mrs. Goodyear prior to the second agreement, can be charged as a credit against its indebtedness arising upon the subsequent sale of the land. We hold further that when, in pursuance of the authorization of June 7th, defendant procured a conveyance of the land from Mrs. Goodyear to its own clerk it became bound by an implied agreement to pay off the encumbrances with accrued interest, and to pay Mrs. Goodyear twelve thousand dollars, unless by valid subsequent agreement she had consented to make her claim for that sum dependent upon the amount actually collected by defendant upon the securities accepted by it in part payment of the purchase price. There is no finding, and we think no sufficient allegation in the answer, that she consented to any such modification of the written authorization. What has been said covers every substantial point made by defendant in support of its appeal, except the claim that, according to the evidence, it should have received credit for one or two payments on account of Mrs. Goodyear which the court disallowed. We think that on the uncontradicted evidence the court should have allowed an item of $220 paid Montgomery and $171.14 taxes. There are perhaps some other small items which should have been allowed, and for this error, affecting as it does the amount of

the judgment, we think that part of the order denying a new trial should be reversed.

It is ordered that so much of the order appealed from as grants a new trial be affirmed, and so much thereof as denies a new trial of other issues be reversed.

McFarland, J., Henshaw, J., and Lorigan, J., concurred.

SHAW, J.—I concur in the judgment and in all of the opinion of the chief justice, except the part thereof to the effect that where a garnishee, in his answer to the sheriff, admits that he is indebted to the defendant, the service of the garnishee process in such cases interrupts the running of the statute of limitations on the debt, and in fact prevents its again running until the attachment is discharged or the plaintiffs' debt paid. The provision of section 544 of the Code of Civil Procedure, which is said to have this effect, applies alike to cases where the garnishee owes a debt to the defendant and to those where he has in his possession personal property belonging to the defendant. Where the garnishee has property which he admits he holds as custodian of the defendant, the statute of limitations does not run, and cannot begin to run, so long as he admits that he holds as such custodian, nor until in some manner he asserts a claim thereto adverse to the defendant. The admission in the answer to the sheriff in such cases, therefore, would of itself be evidence that the statute had not begun to run. But where a matured debt exists at the time of the service of the garnishee process the statute of limitations has already begun to run against it, and an admission that the debt still exists does not ordinarily stop or interrupt the running of the statute. There are strong grounds for holding that section 544 was not intended to give any greater effect in this respect to an admission contained in an answer to the sheriff on garnishee process than in ordinary cases, and that the full meaning of that section, so far as this point is concerned, is that after the service of garnishee process upon a third person the garnishee, if he keeps the property or does not pay the debt to the sheriff, shall thereafter be liable to the attachment plaintiff in the same manner and to the same extent that he was theretofore liable to the defendant, but no farther, and that

this transfer of liability continues, subject to its original limitations and qualifications, until the attachment is discharged or any judgment in the main action in favor of the plaintiff satisfied, in which case the liability to the attachment plaintiff ceases, and the liability to the defendant continues, if not then barred.

As this question is not involved in the case, I do not think any opinion should be expressed concerning it.

Van Dyke, J., and Angellotti, J., concurred in the foregoing.

Rehearing denied.