[Civ. No. 1751.   Third Appellate District.—May 20, 1918.]

CHARLES HING, etc., Respondent, v. JOE LEE et al.,
Defendants; FIRST NATIONAL BANK OF MERCED
(a Corporation), Appellant.

EXECUTION—LIFE INSURANCE—EXEMPTION.—All moneys, benefits, privi-
leges, or immunities accruing or in any manner growing out of any
life insurance, if the annual premiums paid do not exceed five hun-
dred dollars, are exempt from execution.

BANKING LAW — DEPOSITS FOR COLLECTION — TRUST.—The deposit of
mortgages and other specific instruments for collection or the draw-
ing of a draft on a debtor and giving it with specific instructions to
collect and remit is a trust transaction, and the money, if collected,
is affected with the trust.

ID.—CHANGE FROM TRUST TO DEBTOR RELATION.—While the trust rela-
tion might be changed by custom or agreement into that of debtor
and creditor after the collection of the proceeds, the bank cannot
divest itself of the trust relation and assume the other at its own
convenience.

ID.—COLLECTION OF INSURANCE POLICY—PAYMENT TO SHERIFF ON GAR-
NISHMENT PROCEEDINGS AGAINST INSURER — BREACH OF TRUST.—
Where a bank collects an insurance policy and is instructed by the
insurer to pay the claim of the bank and hold the balance for the
insurer until called for, the balance constitutes a trust fund, and it
is a clear violation of such trust for the bank to pay over the same
to the sheriff on garnishment proceedings without giving the insured
any notice in order that he might make a claim of exemption.

APPEAL from a judgment of the Superior Court of Mer-
ced County.   E. N. Rector, Judge.

The facts are stated in the opinion of the court.

Terry W. Ward, for Appellant.

John Outcalt, for Respondent.

BURNETT, J.—On the 1st of April, 1901, the Equitable
Life Assurance Society of the United States issued to re-
spondent an endowment policy of life insurance.   Thereafter
respondent borrowed from said society the sum of one thou-
sand dollars and assigned to appellant the said policy as

security for the payment of said indebtedness, the bank undoubtedly acting as agent of the insurer in the matter.

The policy matured on the 1st of April, 1916, and there became due plaintiff the sum of $1,325.94, being the face value of the policy and the surplus reduced by said one thousand dollar loan. The insurer sent to appellant a check for said amount payable to said bank and to plaintiff, which was received by appellant on the fourth day of April, 1916. At this time respondent was indebted to appellant in the sum of $431.45, on certain promissory notes, and, also, to one J. H. Simonson upon a promissory note for the sum of $436, which note was held by the bank, as security for the payment of a loan by it to said Simonson. The annual premium on said policy was less than five hundred dollars, and, therefore, "all moneys, benefits, privileges, or immunities accruing or in any manner growing out of" said policy were exempt from execution. (Code Civ. Proc., sec. 690, subd. 18; *Briggs* v. *McCullough,* 36 Cal. 542; *Holmes* v. *Marshall,* 145 Cal. 780, [104 Am. St. Rep. 86, 2 Ann. Cas. 88, 60 L. R. A. 67, 79 Pac. 534].)

On receipt of said check the cashier of the bank sent a clerk with the check to plaintiff's home, a few blocks distant, with a request that plaintiff sign it, which he did. It was understood and agreed between plaintiff and the bank that out of the proceeds of the policy the said indebtedness of respondent to appellant and to said Simonson should be paid. Plaintiff was credited with these payments on the fifth day of April, and the balance of said check for $1,325.94, or the sum of $458.49, was deposited in said bank by the cashier to the credit of plaintiff. The next day the sheriff of the county, under and by virtue of an execution issued out of the superior court of said county upon a judgment recovered in said county by one Joe Lee against said plaintiff and others, previous to the sixth day of April, 1916, for a sum in excess of $458.49, levied upon the money of plaintiff in the hands of said bank, and the said bank, through its president and cashier, delivered to said sheriff upon said execution the said sum of $458.49. Plaintiff knew nothing of the levy until some days after the money had been paid over to the sheriff, and, therefore, had no opportunity to claim any exemption from execution. He afterward made a demand upon the bank for the payment of said amount but it was denied.

The court held that the proceeds of the insurance policy constituted a trust fund in the custody of said bank and that appellant was not legally justified in paying it over to the sheriff, without affording the plaintiff an opportunity to make his claim of exemption. The finding as to the trust relation is supported by the testimony of plaintiff. His testimony was given in somewhat broken English, but, after stating that Mr. Hart, the cashier of the bank, called him up by telephone, he proceeded: "He told me, 'You know the money came all right'; he told me to sign the name on the check. I say, 'You leave the money in there and I go up where I get well with my foot, when I go up there. I will pay Mr. Simonson and the balance I leave in the bank to pay the Chinaman. I owe the Chinaman two or three hundred dollars. I borrow money to pay on that life insurance two or three years ago from two Chinamen; he go home now. I no tell Mr. Hart to deposit the money.' I said, 'The balance you leave. I want to take that money and pay the Chinamen.' "

There can be no doubt that the check was the property of plaintiff, and that he directed the said officer of the bank to cash it, pay the claim of the bank and of Simonson, and hold the balance until plaintiff could call for it. The situation is covered by the principle announced in section 313, page 634, 7 C. J., as follows: "The deposit of mortgages and other specific instruments for collection or the drawing of a draft on a debtor and giving it with specific instructions to collect and remit is a trust transaction and the money, if collected, is affected with the trust."

As to this point several instructive cases are cited by respondent, one of which is *Hall* v. *Beymer*, 22 Colo. App. 271, [125 Pac. 561]. Therein Beymer placed with Rocky Ford Bank a note for collection. The bank sent the note to a Colorado Springs bank, which collected it and remitted the proceeds in the form of a draft. This was received by the Rocky Ford Bank on December 28th, which, on the same day, sent it to a Pueblo bank to the credit of the former. On December 31st the Rocky Ford Bank placed the amount of the collection to Beymer's credit on its books and the same day said bank ceased to do business. The testimony showed that Beymer was asked by the president of said bank if he "wanted to put the proceeds in as a deposit" and he

replied, ''No, I wanted it for myself. I wanted the collection.'' The court held that the Rocky Ford Bank was Beymer's bailee not his debtor.

The facts of that case present a similar situation to the one herein involved. There seems to be no essential difference. It is true, as the authorities hold, that, in such cases, ''the trust relation might be changed by custom or agreement into that of debtor and creditor after the collection of the proceeds,'' but it is equally true that ''a bank cannot divest itself of the trust relation and assume the other at its own convenience.'' (7 C. J. 634.)

Of course, it is the duty of the trustee to protect and preserve such property for the benefit of the beneficiary. (39 Cyc. 325.) It was a clear violation of this primary obligation for the trustee to pay over the property to the sheriff without making any effort to preserve it for plaintiff. The bank sustained to respondent a relation of trust and confidence, and it had no right to withhold from the latter information that was essential to the protection of plaintiff's interests. Indeed, rather than permit the property to be lost to plaintiff without an opportunity to assert his claim of exemption, the bank should have informed the sheriff that the money was exempt from execution and would not be paid over until it could be ascertained whether plaintiff desired to waive his privilege. It is manifest, also, that the bank could have lost nothing by pursuing this course. Within a few minutes plaintiff could have been notified, and, unless he claimed his privilege immediately, he would have been justly deemed to have waived it. The bank was apparently more anxious to have the judgment creditor satisfied than to exercise the utmost good faith toward plaintiff. Debts should be paid, but public policy recognizes the exemption of certain property belonging to debtors as even more important than the payment of his debts. Otherwise it would not be protected by the law from execution. But of what avail to the debtor is the privilege, if he have no opportunity of exercising it? He is not required to claim the privilege until an occasion arises whereby the property is liable to be taken away from him. Here he had no such opportunity in consequence of appellant's violation of its duty to notify him of the occasion for the exercise of his privilege. We consider it a plain case of breach of trust on the part of appel-

lant, and we cannot believe that the moral sense of the community or the common practice of banks or any provision of the statute justifies the course, which was herein pursued to the prejudice of respondent.

We think that the case is governed by the fundamental principle of good faith which characterizes the status of a trustee, but, even if we concede that, by virtue of the deposit of the money, the bank became merely the creditor of plaintiff, the debt was exempt from execution. The reason for this view is clearly set forth in the Holmes case, *supra.* Therein it is said: "Appellant contends that by depositing the money in the bank the money lost its identity and that thereafter the bank owed Annie J. Jenkins the money. That the debtor thus voluntarily parted with the money, which was exempt, and acquired in lieu thereof a credit due by the bank. Said construction would seem to be unreasonable and no authority is cited which supports it." The court proceeds to a more detailed consideration of the subject and reaches the conclusion that appellant's contention involves an absurdity which must be rejected.

Considering it thus a deposit, we feel satisfied that, in view of the ignorance of plaintiff of the levy of the execution, it was the duty of the bank to notify him before paying over the money to the sheriff. If it had been other personal property belonging to plaintiff, in the possession of defendant, a sale would be required, and it would have made no particular difference whether the bank gave notice or not, since the sheriff would have been required to give notice to plaintiff before the sale. But, it being money, the conduct of the bank made it impossible for plaintiff to claim this privilege of exemption, and hence appellant should be held responsible for the amount lost.

In Freeman on Executions, third edition, section 416, it is said: "Although as a general rule the exemption of property from execution can only be claimed by its owners, yet the rule does not apply to proceedings by garnishment. If the garnishee has in his possession any property or credit of the defendant not subject to execution he certainly may and he probably must, assert the fact of such exemption and thereby prevent the property from being taken and applied under the execution. . . . When, however, the person summoned knows of a defense as that the debt or property sought to be reached

is exempt from execution, we believe that it is his duty to assert such defense, or, at least, to inform his creditor of the proceeding and give him an opportunity to act for himself, and if the duty is not performed, that no judgment or order against the person summoned can protect him from liability to his creditor."

In the case at bar the garnishee knew, or, at least, had reason to know, that the property was exempt from execution and that the judgment debtor had no knowledge of the garnishment, and hence the payment of money to the sheriff does not protect appellant from liability to the judgment debtor.

We agree with respondent in the statement of these propositions: "1. Respondent was the owner of the policy in question and of that part of the proceeds thereof here in controversy at the time of the receipt of the same by the bank on April 4, 1916, and continuously up to and including the time of the levy. 2. The proceeds of said policy were exempt from execution under subdivision 18 of section 690 of the Code of Civil Procedure. 3. It was not the respondent's duty to claim exemption before the levy, or to make such claim upon anybody other than the levying officer or to make such claim after it would have been an idle and ineffective act. 4. Appellant bank was a trustee of the proceeds of said policy for respondent's benefit. 5. The bank could not make respondent its depositor without his consent. 6. Though exemption is a personal privilege, which the judgment debtor may waive if he choose, yet the privilege exists until he, himself, or someone authorized to do so for him waived it either in express words or by overt act, or by waiting more than a reasonable time before attempting to claim it, and a garnishee, whether trustee or mere debtor, cannot waive it for him, or deprive him of the opportunity to claim it without being liable to him in damages. (18 Cyc. 1449; Smyth on Homestead and Exemptions, sec. 562; *Southern Ry. Co.* v. *Fulford,* 125 Ga. 103, [5 Ann. Cas. 168, 54 S. E. 68] )"

In some of the cases cited in support of the lower court's decision, the garnishment proceedings involved a formal suit in court, but, manifestly, the same principle must apply with greater emphasis to our summary proceeding of garnishment, wherein more easily may a judgment debtor be deprived of his statutory privilege of exemption.

Another point, upon which appellant lays some stress, relates to the proof of the demand claimed to have been made upon appellant for the payment to respondent of said sum of money. The allegation of the complaint, however, as to that was not denied in the answer, and, of course, it is deemed admitted. We need not, therefore, consider the sufficiency of the proof.

Some other questions are argued by appellant, but we think the foregoing covers the material considerations in the case.

We are satisfied that the decision of the lower court is just and the judgment is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 18, 1918.