[Civ. No. 34715. Second Dist., Div. Five. Sept. 30, 1970.]

WILLIAM N. BOWIE, JR., as Trustee, etc., et al.,
Plaintiffs and Appellants, v.
UNION BANK, Defendant and Respondent.

808

**COUNSEL**

J. Robert Maddox and Robert Ferguson for Plaintiffs and Appellants.

Loeb & Loeb and Robert M. Ruben for Defendant and Respondent.

## OPINION

**REPPY, J.**—The trustee in bankruptcy for Wilson Construction Co., depositor, and counsel, who defended it in an attachment action brought by a third party and who had been given a fee lien by it on the attached funds, appeal a judgment upholding a setoff asserted by Union Bank against the funds after the attachment expired due to the lapse of three years.

Most of the evidence before the trial court was in the form of a stipulation executed by the parties.

Wilson Construction Co. (the company), on March 26, 1962, had a general commercial account with Union Bank (the bank) with a balance of $86,832. The company was at the same time indebted to the bank in the sum of $85,396.67.

Shortly prior to that date the company became a defendant in a contract-type action brought by Joseph D. Kirby (Kirby), and a writ of attachment for $24,290 was issued by the superior court against the company. The writ was served by way of garnishment on the bank on March 26, 1962. The writ of attachment served on the bank directed it to pay to the sheriff any indebtedness from the bank to the company, not exceeding $24,290. The bank exercised its right of offset so that there was left on deposit only $1,435.33.

The next day an agreement was made among the bank, the company and Kirby, whereby Kirby reduced the amount of its garnishment to $14,290, the bank made to the company a 90-day loan of $100,000, the company, out of the $100,000, effected a deposit of $12,854.67 to its commercial account, making its total $14,290, and the bank made a return to the sheriff acknowledging that it was indebted to the company in the sum of $14,290.

The bank, upon acknowledging to the sheriff the existence of the debt to the company, made a bookkeeping entry debiting the company's commercial account and crediting an internal account, entitled "Union Bank Accounts Attached," in the amount of $14,290. This account is used to segregate the bank's indebtedness to any depositors subjected to garnishment, and this procedure is the normal practice of the bank with respect to garnishments. The bank's motivation is to prevent inadvertent disbursal of funds subject to garnishment.

On June 25, 1962, the company entered into a retainer agreement with the law firm of Gray and Maddox (the attorneys), to defend it in the Kirby suit. The attorneys agreed to represent the company through final judgment of the superior court, and the company agreed to pay the attorneys

on an hourly and per diem basis under monthly billings. To secure its obligation for fees and costs, company granted attorneys a lien "upon the funds presently held under an attachment."

On July 30, 1962, about one month after its due date, when the agreement to do so apparently was made, the $100,000 loan was superseded by a $59,134 loan (the amount to which the preceding loan had been reduced), payable at the rate of $1,000 per month on the 25th day of each month. There was an acceleration clause in the new note. The record does not indicate whether the bank thought of, or discussed with Kirby or the company, before renewing the first note, making an offset against the attached funds.

Between August 20 and October 22, 1962, the bank received a letter from the company, dated August 20, 1962, advising the bank that on June 25th the company had assigned to its attorneys "all of [its] . . . interest in . . . the commercial checking account heretofore . . . maintained with your organization." The letter indicated that the checking account was "the subject of a prior claim in respect to an attachment. . . ." The bank was directed, upon release of monies from attachment, to pay them to the attorneys.

On October 22, 1962, the bank sent a letter to the company referring to the company's letter of August 20th. The company was reminded that on September 18, 1962, it had been notified that the bank had been served with a "withhold notice" by the state Department of Employment in the amount of $6,084.67. The company was advised that since the bank was in no position to determine the priority of the company's assignment over the claim of the department, it would be "unable to release any moneys to the named attorneys." A copy of this letter went to the attorneys.

The company's note payment, due on October 25, 1962, was not paid, so the company was then delinquent, and the acceleration clause was applicable. At this point the right of offset against items subject thereto arose again. The bank did not assert such a right against the attached funds until much later in time.

On May 16, 1963, the company filed a petition for an arrangement under the bankruptcy act. William N. Bowie, Jr. (the trustee; at times the trustee and the attorneys will be referred to as "plaintiffs") was appointed trustee. At that point, as a claim filed by them in the bankruptcy proceeding indicates, the attorneys had performed legal services for the company valued at $878.60 under their fee contract. It would appear that

the attorneys then became counsel for the trustee.[1] On November 16, 1963, the company was adjudicated bankrupt. According to the record before us, no evidence was submitted concerning any claim filed by the bank in the bankruptcy proceeding.

Between October 22, 1962, and March 26, 1964, the company's obligation on the note had been reduced to $18,298.50. On the latter date, the bank wrote off the unpaid balance of said note. What prompted this action at this time is not made clear.

On March 29, 1965, a lapse of more than three years after the issuance of the writ of attachment (see § 542b Code Civ. Proc.) the bank exercised a claimed right of offset against the $14,290. It did this by making an account charge. The bank's charge page shows, "Charge Account of Union Bank Accounts Attached Account Number 10093-0429." In the upper right hand corner is the designation, "$14,290.00 (Commercial)."

On December 20, 1965, in the Kirby action, apparently on the solicitation of the company, the court ordered that the attachment which had been run against the company's bank account be released and stated that the bank should pay the $14,290 to the trustee. Evidently a copy of this order was transmitted to the bank, but it declined to follow it.

On December 24, 1965, the trustee and the attorneys demanded of the bank that it pay said sum to them. On February 2, 1966, the bank refused to comply. On August 2, 1966, the trustee and the attorneys filed the declaratory relief action now on appeal, asking the trial court to declare that they had a prior right to the $14,290.

### Contentions of the Trustee and the Attorneys as Appellants

(1) The bank waived its right to claim an offset by virtue of its acknowledgment of indebtedness made to the sheriff and to the attaching creditor.

(2) In effect, the funds were put by the bank in what might be termed a "custody-of-the-law" account which was not subject to offsets.

(3) If the "Union Bank Accounts Attached" account was not a custody-of-the-law account, it was a special purpose or trust fund account of which the garnishor and the garnishee were beneficiaries and as to which the bank

---

[1]Since the attorneys claim $6,878.60 from the bank as their part of the attached funds, it is assumed that they considered $6,000 as the value of their services to the trustee. It is not made known whether this was calculated under the fee contract formula or set by the bankruptcy court.

could not claim any offset as against "the beneficiary" (the company) or its assigns (the attorneys).

(4) The bank should be estopped to assert any paramount claim against the attorneys, because of expressions in its letter of October 22, 1962.

(5) Assuming the attorneys had a good claim, the amount thereof should be $6,878.60 rather than $878.60, the extra $6,000 apparently being what the attorneys earned in legal services after the trustee in bankruptcy was named. Presumably the trustee continued to have the attorneys act for the bankrupt estate.

### CONTENTIONS OF THE BANK

The bank, as respondent, contends: that the findings of the trial court are supported by the evidence; that there can be no estoppel to deny the validity of the attorneys' claim, essentially because there was no proof of any intention on its part that the attorneys would do any act to their own detriment on the basis of the material in its letter and the attorneys were not ignorant of the facts and did not rely on the material in the letter; that, in any event, the attorneys should recover only $878.60 since they said in answers to interrogatories that this was all that they were owed by the company, the bank taking the position that the lien and assignment given by the company does not apply to the trustee, but that there was, rather, an independent hiring of the attorneys by the trustee to which the security arrangement did not apply; that the circumstances of the case do not amount to a waiver by it or the right of offset. The bank additionally claims that its bookkeeping entry, debiting the company's account and crediting "Union Bank Accounts Attached" was solely an internal matter which did not affect the nature of the bank's relationship with the company; that the sole purpose of the entry was to prevent inadvertent disbursal of funds inconsistent with the bank's response to the garnishment and that it did not create an in-legal-custody account or make a special or trust-type deposit. Finally, the bank asserts that, as a nonparty to the Kirby suit, it was not bound by the court's direction to pay the fund which had been under attachment to the trustee, claiming that it could act on its own after the lapse of three years on the basis that the garnishment was automatically dissolved by the passage of time and that it did not have to await receipt of a copy of an order of release obtained by the company as defendant in the Kirby suit.

### DISCUSSION

Plaintiffs appear to claim that the bank waived the right of offset which it ultimately attempted to pursue by setting aside its initial offset,

loaning the company $100,000, allowing $14,290 to be in the company's commercial account, and, by reason of the loan, no longer being the possessor of a "matured" obligation of the company to it. To a great extent, what were to be the consequences of the agreement among Kirby, the company and the bank is a matter of the intentions of the parties. No specific evidence was adduced as to this. It was open to the trial court to conclude that the agreement did not include, by implication, a waiver on the part of the bank to assert future offsets as between it and the company. The actions of the bank do, to some extent, suggest that it felt bound not to claim an offset as against Kirby as long as the attachment remained effective. After the $100,000 loan was renegotiated to one of $59,134, payable at $1,000 per month, the company became delinquent on that new loan. This was on October 22, 1962. No offset was asserted with respect to Kirby, the garnishor, during the entire time that the attachment remained effective. The bank claimed an offset against the company only when it acted on the proposition that the attachment had spontaneously expired.[2] This forebearance as to the garnishor did not mean that the same forebearance had been agreed to be, or was extended to, the company. Considering the three-party agreement, it appears that, in effect, the parties were in accord that the new status should be considered as retroactive; that is, it was as if the garnishment had been made when there was $14,290 in the company's commercial account and the $100,000 obligation of the company to the bank was unmatured. We conclude that the trial court was justified in finding that the bank had not waived its right of offset as against the company or the trustee.

We are satisfied that there is support in the record for the trial court's position that the bank's "Union Bank Accounts Attached" account was not a special account in the sense argued for by the defendants. It is true that the trial court made tentative observations during the course of the litigation which suggested that this would be its position. However, its final decision was to the contrary, and it made clear what its trial attitude was by saying, at the close of the case, "The fact that I have thrown out certain postulates for argument here doesn't mean that I used any of them. Simply trying to ventilate the subject. . . ." The possible understanding among the three conferring parties that the bank would not claim an offset as against Kirby did not make into one what otherwise was not a special deposit or trust account. The bank followed its general procedure which was applicable to all its depositors. Its "Union Bank Accounts Attached" account was simply an internal protective device.

---

[2] There was really no actionable period of delinquency of the $100,000 note which was due June 27, 1962, but was not replaced with the new loan until July 30, 1962, because the agreement to renegotiate was effected in June 1962 and thereafter it was merely a matter of working it out.

The acknowledgment by the bank of indebtedness to the sheriff (following the actions taken after the three-party agreement) did not constitute a waiver of offset either. Under Code of Civil Procedure, section 544, the bank, as garnishee, had the choice of paying its debt to the company, which it had acknowledged to the sheriff, over to him, or remaining liable to Kirby in the amount of the debt until the garnishment was released. Making the second choice did not have the effect of creating a specific trust fund as to which the general rule that a trustee can not offset against a beneficiary would apply. It did not put a specific fund in *custodia legis*. The internal banking procedure of utilizing the "Union Bank Accounts Attached" device for all depositors involved in garnishment proceedings did not accomplish this. That account was not the sheriff's account. Therefore, it was not under the control of the court.

In *Hing* v. *Lee*, 37 Cal.App. 313 [174 P. 356], wherein the issue was raised whether the garnishee owed a duty to its creditor (the defendant in the garnishment action) to protect its right of exemption which existed as to certain insurance proceeds, it was argued that such duty might exist if the bank actually held the insurance proceeds in trust, but that, under the facts of the case, it did not because the proceeds were on deposit of a type creating only a debtor-creditor status. The appellate court appeared to accept the proposition that the latter situation would prevail as to a normal type of deposit, but it said that nonetheless there would be a duty of fair play on the part of the bank to its depositor with respect to exemption rights. We conclude that the trial court was correct in determining that there was no special deposit or conventional trust situation. The decision of *Clyne* v. *Easton, Eldrige & Co.*, 148 Cal. 287, 293-294 [83 P. 36], also indicates the difference between a garnishee being the custodian of the defendant's property and being his debtor.

As mentioned by plaintiffs there was language in *Clyne, supra,* which pointed toward the possibility of a trust aspect. The opinion referred to the option of the garnishee under Code of Civil Procedure, section 544, above mentioned, to pay his debt over to the sheriff or, should he choose, to withhold payment and assume a status of liability toward the garnishor. In that connection the Court of Appeal stated that the garnishee makes himself, by his own act, a trustee of a fund "and in that character liable to account to the party entitled whenever called upon." (P. 299.) It then added that the continued liability of the garnishee is made a consequence of his failure to pay the debt to the sheriff. The latter pronouncement is the main point. We do not feel that the prior language meant that the garnishee should maintain a segregated fund in the situation where, before garnishment, it simply owed a debt to the defendant, particularly where the garnishee is a bank. Certainly there is no trust concept in favor of such a defendant

as a creditor of the bank. In any event, the discussion in *Clyne* is dictum, since the main holding was that the sheriff had failed to attach a debt because his notice referred only to monies, credits, and effects belonging to defendant which did not include an indebtedness; and, of course, *Clyne* was not a bank case.

Plaintiffs also cite *Agnew* v. *Cronin*, 148 Cal.App.2d 117 [306 P.2d 527]. In this action, the defendant in the underlying suit had a claim of exemption available as to the item garnished. It was earnings for personal services. The holding was that the garnishee owed the obligation of fair play to its creditor not to let him lose the exemption right. Related to this aspect, the appellate court, at page 127, quoted from the case of *Hardy* v. *Hunt*, 11 Cal. 343, 350, the proposition that a garnishee is somewhat in the light of a trustee and is bound to protect the rights of all parties to the goods or credits attached. The *Hardy* case, however, was a property-in-custody case, not one of a simple debt. All that the observations of the appellate court in *Agnew* stand for is that the defendant is entitled to trust the garnishee to keep it apprised of any occurrence which jeopardizes its right of exemption; that the garnishee has an obligation of fair play with respect to its creditor as to such a factor.

 It was not necessary for the bank to make accounting entries to return the funds to the company's commercial account before exercising its setoff right; the law does not require idle acts. (Civ. Code, § 3532; *Citron* v. *Franklin*, 23 Cal.2d 47, 50-51 [142 P.2d 16]; *City of Stockton* v. *Stockton Plaza Corp.*, 261 Cal.App.2d 639, 655 [68 Cal.Rptr. 266]; *Gross* v. *Raeburn*, 219 Cal.App.2d 792, 807 [33 Cal.Rptr. 432].)

 As between it on the one side and the company and the bankrupt estate on the other, the bank had the right of offset at all times after the company's delinquency on the second note. (§ 68 Bankruptcy Act; 11 U.S.C. § 108; *New York County Nat. Bank* v. *Massey*, 192 U.S. 138 [48 L.Ed. 380, 24 S.Ct. 199]; *Studley* v. *Boylston Nat. Bank*, 229 U.S. 523 [57 L.Ed. 1313, 33 S.Ct. 806].) The attorneys do not claim priority in right based on mere priority in time. As long as the bank felt free to make its offset so far as Kirby was concerned (and that did not necessarily turn on a judicially ordered release, as a point of fact), the company or the trustee had no cause for complaint. The bank had already effected the offset when the court order was issued. Since the bank never held the funds in *custodia legis*, and was not a party to the suit, it was not subject to the court's order. The court order for release of attachment and payment of the funds to the trustee, which apparently was obtained at the solicitation of the company in anticipation of a possible claim against the bank, with no notice to the bank, was not binding upon it. (See *Fazzi* v. 

*Peters,* 68 Cal.2d 590 [68 Cal.Rptr. 170, 440 P.2d 242]; *Takahashi* v. *Kunishima,* 34 Cal.App.2d 367 [93 P.2d 645]; *Bunnell* v. *Wynns,* 13 Cal. App.2d 114 [56 P.2d 267].)

Thus, none of the contentions made by the trustee are sustainable.

■ There remains the claim of the attorneys that remarks in the letter of October 22, 1962, estopped the bank from claiming the right of setoff with respect to them. Initially it is to be observed that the communication to the bank to which the October letter was a reply came from the company and not from the attorneys. The return letter was to the company. Therefore, the copy thereof received by the attorneys had to be considered by them in this light. There obviously was no reason for the bank to make reference to the existence and status of the loan to the company which it knew all about. The tone and purport of the letter were such that it would put the attorneys upon inquiry. The trial court so held, and it was justified in doing so. It is true that at one point during the trial the court observed: "There is no duty of further inquiry. I rule that as a matter of law." However, it was its prerogative to, and it did, change its position when making the findings of fact. We have already made reference to the circumstance that the court finally observed that it did not necessarily mean that it was going to use the tentative postulates it made during trial.

The letter, of course, did not say that the bank would not claim an offset. It said very clearly that no sums would be paid out. At the time the letter was written, the company was not in default and the bank did not have an offset, and nothing was shown to the trial court suggestive that, at that time, it should have anticipated that it would have an offset to claim. Moreover, although the company's letter to the bank referred to an assignment, the attorneys, by their retainer agreement, were given only a lien. The purport of the letter from the company, as far as the bank's position was concerned, did not suggest that the bank should be concerned that whether or not the attorneys would render future legal services to the company would depend upon the likelihood of a substantial amount of the fund under attachment remaining available. Thus, it was open to the trial court to conclude that the bank owed no duty to the attorneys to be more explanatory in its response to the company. Moreover, the trial court was entitled to place significance on the circumstance that the attorneys already had committed themselves to trying the case for the company and were hardly in a position to withdraw simply because the company might not be able to meet its obligation to the bank and an offset situation could arise. The attorneys had already filed an answer and made a motion on behalf of the company in the Kirby case. Thus, there was a justification for a conclusion that there was an absence of reliance on the part of counsel.

The bank has cited to us two cases wherein no estoppel was permitted and remarks of actions of the "offsetter" to the assignee were more conducive to reliance than in the instant case. The first is *Bank of America* v. *Pacific Ready-Cut Homes, Inc.,* 122 Cal.App. 554 [10 P.2d 478] (a party to whom assignor actually was indebted at time of assignment agreed to make payments to assignee as they became due; offset still allowed); the other is *Stern* v. *Sunset Road Oil Co.,* 47 Cal.App. 334 [190 P. 651] ($60,000 prepayment was made by "offsetter" for oil to assignor who requested it to make future payments to assignee. Offsetter advised it would pay assignee on monthly vouchers and actually paid on some vouchers. Offsetter was allowed to use part of prepayment for offset purposes).

Finally, the trial court was entitled to infer that the attorneys had knowledge of enough circumstances, in addition to the fact that the letter of the bank was addressed to the company and had a purport deserving of inquiry on their part to put them on notice that their client did owe money to the bank, which the bank, in due course, might take advantage of as a right of offset. The attorneys were ambiguous about whether they knew of the attachment before the three-way agreement and of the original exercise of the right of setoff. The trial court could infer that they did. The transformation from a matured to an unmatured debt would certainly be cause for inquiry. The attorneys admitted that they were negotiating with the bank on behalf of the company for a construction loan at or about this time. The attorneys knew that top officers of the company had pledged securities to the bank at or about this time.

Under all the circumstances the trial court had a clear basis for deciding that the bank was not estopped to claim an offset as against the attorneys.

Therefore, we do not reach the question of the amount that would properly be the subject of the claim of the attorneys. However, it is clear that the trial court took the position, and justifiably so, that the only amount the company owed to the attorneys for fees was $878.60, the subject of its claim against the bankrupt estate. The other services were rendered to the trustee. The trustee had the right to employ his own counsel. His arrangement with the attorneys was therefore an independent matter.

The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.