[L. A. No. 24128. In Bank. Aug. 7, 1956.]

BANK OF AMERICA NATIONAL TRUST AND SAV-
INGS ASSOCIATION (a National Banking Association),
Respondent, v. LESLIE S. BOWDEN, as Trustee in
Bankruptcy, etc., Appellant.

Nathan Newby, Jr., and C. Douglas Wikle for Appellant.

Edmund G. Brown, Attorney General, and Lee B. Stanton, Deputy Attorney General, as Amici Curiae on behalf of Appellant.

Samuel B. Stewart, Hugo A. Steinmeyer, Robert H. Fabian and Richard G. Rypinski for Respondent.

SCHAUER, J.—Cole's Check Service, Inc., originally named as a defendant[1] in this litigation, appealed from an order denying its motion to release from the levy of an attachment "all trust funds" deposited to its account at The Bank of Los Angeles at Westwood and at the Hollywood State Bank.[2] We have concluded that defendant is correct in its contention that plaintiff's position is that of a general creditor who under the pertinent statute is not permitted to reach such funds by attachment, and that the order should be reversed.

Defendant at the times here involved was a licensee under the provisions of the Check Sellers and Cashers Law. (Fin. Code, §§ 12000-12403.) One of the purposes of the Legislature in enacting certain provisions of that law which are here involved was to safeguard from the general creditors of the licensed check seller issuing a check or money order in the usual course of such business the funds paid in to the licensee by purchasers of checks or other commercial paper, or by obligors, as hereinafter described in greater detail.

---

[1] Although Leslie S. Bowden, Trustee in Bankruptcy, has been substituted as defendant-appellant in the place of Cole's Check Service, Inc., Bankrupt, in this litigation, the designation "defendant" will in this opinion refer to either Cole's Check Service, Inc., or to the substituted trustee in bankruptcy, as may be appropriate to the matter in discussion.

[2] Such an order appears to be appealable. (See Code Civ. Proc., § 963, subd. 2; *Risdon etc. Works* v. *Citizens' etc. Co.* (1898), 122 Cal. 94 [54 P. 529, 68 Am.St.Rep. 25]; *Fay Securities Co.* v. *Bowering* (1929), 106 Cal.App. Supp. 771, 773 [288 P. 41].)

As defined by section 12004, " 'Licensee' means any individual, . . . or corporation licensed by the commissioner [of corporations] to engage in the business of cashing checks, drafts or money orders, and any corporation licensed by the commissioner to engage in the business of selling checks, drafts or money orders, or of receiving money as agent of an obligor for the purpose of paying bills, invoices or accounts of such obligor pursuant to the provisions of this division."[3]

On March 21, 1955, defendant drew ten checks in the amount of $5,000 each on its general account (in The Bank of Los Angeles at Westwood) payable to "Al Lichtman, Agent." Defendant delivered the checks to Lichtman, as its branch employe, to be used by him for cashing as needed to provide funds with which to cash checks for customers of Pipermart. Pipermart is a supermarket in which defendant maintained a branch of its check service. On the same day Lichtman endorsed the checks in blank and delivered them to Pipermart, which deposited them with plaintiff bank and received immediate credit therefor. Defendant stopped payment on the ten checks and refused to pay them, alleging no consideration. Plaintiff thereupon commenced this action against defendant as drawer of the checks and attached several bank accounts standing in defendant's name. Included in these accounts were two designated "trust account" under the provisions of section 12300.3 of the Financial Code. Defendant moved for an order releasing all trust funds from attachment, the motion was denied, and this appeal by defendant followed.

Section 12300.3 provides that "All money received by a licensee or his agents from the *sale* of checks, drafts, money orders, or other commercial paper serving the same purpose and for the purpose of paying bills, invoices, or accounts of an obligor shall constitute *trust funds owned by and belonging to the person from whom they were received.* . . . All such money . . . shall be separated . . . [and] shall thereafter be kept separate and apart at all times from funds belonging to the licensee . . . and may be used for no purpose other than

[3]Section 12002 states that a check seller or casher is one "who, for compensation, engages, in whole or in part, in the business of selling or cashing checks, drafts, money orders, or other commercial paper serving the same purpose, or receiving money as agent of an obligor for the purpose of paying to a person other than the check seller or casher bills, invoices, or accounts of such obligor."

paying bills of said persons, or paying checks, drafts, money orders, or other commercial paper sold by the licensee. All *such trust funds . . . shall be deposited* in a bank or banks in . . . accounts in the name of the licensee designated *'trust account,'* or by some other appropriate name indicating that the funds are not the funds of the licensee or of its officers, employees, or agents . . . *Such funds are not subject to attachment,* levy of execution or sequestration by order of court *except by* a payee or bona fide assignee or bona fide *holder in due course* of a check, draft, or money order *sold by a licensee,* or except by an obligor for whom a licensee is acting as an agent in paying bills. . . .

"Nothing in this law shall be construed to prevent a purchaser, a holder in due course, the payee of a check, draft, or money order *sold by the licensee in the usual course of his business,* or an obligor for whom the licensee is acting as an agent in paying bills of the obligor, from taking any legal action necessary to enforce any claims which said purchaser, holder in due course, payee, or obligor may desire to take including the right to levy attachment or execution . . ." (Italics added.)

Plaintiff bank first suggests that defendant has failed to show that the funds attached were trust funds under the provisions of the above quoted section, urging that "There is nothing in the record other than the bare statement in the affidavit of H. Rawland Cole [vice-president of defendant] to show that the funds attached were trust funds."[4] In this connection plaintiff further suggests that the ledgers of defendant's accounts indicate that defendant was dilatory in segregating the trust funds and transferring them from its general to its trust accounts, and that therefore "The conclusion is inescapable that the appellant [defendant] was not complying with Section 12300.3 of the Financial Code until

[4]The motion to release the funds was heard upon affidavits, and in the uncontroverted affidavit of H. Rawland Cole it is stated that the funds were received by defendant "from the sale of its money orders to members of the public and . . . from third parties for the payment of bills of said third parties . . . [and] were trust funds under section 12300.3 of the Financial Code.

"That said funds were on deposit in the General Account of Coles and in Trust No. 1 and Trust No. 2 denominated Trust Funds under Section 12300.3 of the California Financial Code.

"That on said date the funds in the General Account were trust funds in the process of segregation and transfer to the Trust Account as provided by Section 12300.3 of the Financial Code. . . ."

. . . it saw an advantage in attempting to comply.'' Plaintiff does not, however, dispute any fact relative to the origin of the funds or the relationship of defendant and its customers, which is essential to fixing the status of the funds as in truth trust funds within the meaning of the statute. █ Mere dilatoriness in complying with the statute would not, of course, alter the status of trust funds in trust accounts. Inasmuch as the facts which determine the character of the funds as trust funds were established without substantial contradiction by Cole's affidavit, plaintiff's position on this point is without merit.

█ Plaintiff next contends that the ten checks were sold by defendant in the usual course of its business and that as a holder in due course it was therefore entitled to attach the trust funds under section 12300.3. Plaintiff concedes that the checks were delivered by defendant to Lichtman ''for his use in the check cashing business as agent of the defendant,'' but urges that Lichtman sold, endorsed and negotiated the checks to Pipermart ''in the usual course of . . . business'' and ''as contemplated by'' defendant. No case has yet interpreted section 12300.3. In the first place, however, plaintiff mentions no evidence indicating that defendant did so contemplate transfer of the checks to Pipermart. In the second place, the fact that Lichtman endorsed the checks in blank, thus making them payable to bearer and negotiable by delivery (Civ. Code, § 3115), shows that no ''sale'' thereof to Pipermart took place as contemplated by the statute. The customary and salutary purpose of ''purchasing'' a check ''sold'' by a licensee would appear to be to provide a means for the safekeeping or secured transmittal of money, which is not ordinarily accomplished by an instrument negotiable by delivery or payable to bearer. This view is supported by the provisions of section 12310 of the Financial Code, which, at the times here involved, provided that ''A licensee . . . shall not sell checks payable to bearer, to cash, or to the purchaser.''[5] The contemplated transaction, therefore, is the issuance of a check to a third person payee at the request of the purchaser of the check. The conclusion is thus clear that the checks were not ''sold'' to Pipermart within

---

[5]By amendment of the section effective in September, 1955, permission was given to sell a check in which the name of the payee does not appear, if the check does not exceed $150. (Stats. 1955, ch. 774, § 1.)

the contemplation of the statute. It follows that plaintiff's claim that it is a holder in due course of checks sold by defendant licensee in the usual course of its business is untenable, and that therefore the trust funds here involved were not subject to attachment by plaintiff.

In terms of trust law, when a check is sold the licensee becomes the trustee, the purchaser becomes the trustor, and the third party payee and holders in due course become the beneficiaries of the trust. The Legislature, by section 12300.3, has authorized both trustor and beneficiaries to enforce the trust, but has denied to general creditors such as plaintiff the right to attach or levy upon the trust funds. The rules thus laid down by the statute appear fair and equitable, and we should not allow them to be frustrated by sustaining the attachment here attempted by plaintiff.

The order appealed from is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.

Respondent's petition for a rehearing and application for leave to produce additional evidence were denied September 6, 1956.