[Civ. No. 26593. Second Dist., Div. Two. Apr. 22, 1963.]

In re COLE'S CHECK SERVICE, INC., Receivership of Trust Funds. R. E. ALLEN, as Receiver, etc., Petitioner and Respondent, v. JOSEPH F. FARGO, Claimant and Appellant.

Nathan Newby, Jr., for Claimant and Appellant.

Kenny, Morris & Ibanez and John A. Vander Lans for Petitioner and Respondent.

ASHBURN, J.—Joseph F. Fargo, doing business as Main Liquor & Wine Depot, appeals from ''Order Approving, Settling and Allowing Report and Second Account Current of Receiver [R. E. Allen], and Instructing Receiver on Claims, etc.'' Respondent Allen is general receiver of the assets of Cole's Check Service, Inc., and Fargo's contention on appeal is that his claim to payment out of the receivership assets was erroneously rejected by the court in said order.[1] Before bankruptcy of Cole's Check Service, Inc., Fargo had entrusted to Cole's the sum of $3,908.38 for deposit by it in

---

[1] The record before us is so abbreviated that it is difficult to get at the facts but we believe we have sufficient to enable us to dispose of the merits.

Fargo's own bank account, which was not done.

Cole's Check Service, Inc., prior to its bankruptcy on April 4, 1956, was engaged in business as a check seller or casher, licensed under division 3 of the Financial Code, section 12000 et seq.[2] Section 12300.3 of that code provides: "All funds received by a licensee or his agents from the sale of checks, drafts, money orders, or other commercial paper serving the same purpose and for the purpose of paying bills, invoices, or accounts of an obligor shall constitute trust funds owned by and belonging to the person from whom they were received. . . . " The Supreme Court, in *Bank of America* v. *Bowden,* 46 Cal.2d 863, 868 [300 P.2d 10], summarizes the effect of this section as follows: "In terms of trust law, when a check is sold the licensee becomes the trustee, the purchaser becomes the trustor, and the third party payee and holders in due course become the beneficiaries of the trust. The Legislature, by section 12300.3, has authorized both trustor and beneficiaries to enforce the trust, but has denied to general creditors such as plaintiff the right to attach or levy upon the trust funds. The rules thus laid down by the statute appear fair and equitable, and we should not allow them to be frustrated by sustaining the attachment here attempted by plaintiff."

After the Cole bankruptcy had run its course the referee in bankruptcy made an order approving the trustee's account and directing him to turn over all trust funds previously held by Cole's check Service, Inc., to R. E. Allen as receiver, he having been appointed by the Los Angeles Superior Court as general receiver of all the assets and trust funds of the Cole concern.

In *Allen* v. *Ramsay,* 179 Cal.App.2d 843 [4 Cal.Rptr. 575], an action brought by this respondent in his capacity of receiver, seeking recovery of alleged trust funds, the court said, at page 850: "To prevail in this case it would seem that the receiver would have to represent the trustors and obligors of Cole's who gave their money to Cole's in purchase of checks and who gave their money to Cole's to pay their bills and

[2]Fin. Code § 12002: "A check seller or casher is a person: (a) who, for compensation, engages, in whole or in part, in the business of selling or cashing checks, drafts, money orders, or other commercial paper serving the same purpose, or receiving money as agent of an obligor for the purpose of paying to a person other than the check seller or casher bills, invoices, or accounts of such obligor, or (b) who, without direct compensation and not as an authorized agent for a utility company, accepts money for the purpose of forwarding it to others in payment of utility bills."

whose money was paid to the defendants. There is no direct allegation that he, the receiver, represents any such persons. The trustors and obligors referred to in the complaint are spoken of in broad general terms and there is no statement as to when they became such with reference to the repayments to the defendants. It is difficult to see how an action can be maintained in favor of an alleged beneficiary of a trust fund, unless that beneficiary has an interest in the fund in question. There is no allegation in the complaint with reference to this matter. In other words it is not clear from a reading of the complaint whom the receiver represents in this particular case." Judgments for defendant entered after demurrers sustained without leave to amend were sustained.

Appellant's counsel describes his opposition to the receiver's account and report as follows: "The objection of Joseph Fargo is an attempt to compel the Receiver to approve his claim and return to him the $3908.38 rather than distribute it pro rata to the holders of dishonored checks issued by Cole's Check Service, Inc. in the course of its business and to the depositors of money to pay bills." In his supplemental declaration filed in the instant proceeding in support of his claim appellant Fargo avers: "On January 3, 1955, I paid to an agent of Cole's Check Service, Inc., the sum of $3908.38, with instructions to deposit the same in my bank account at the Hollywood State Bank, where Cole's Check Service, Inc. also had an account. Instead of depositing the $3908.38 to my account, Cole's Agent deposited it in the Trust Account of Cole's Check Service, Inc. at Hollywood State Bank and said funds came into the hands of the Receiver of Cole's Check Service, Inc. . . . That in March of 1955 the Hollywood State Bank, on orders of Cole's Check Service, Inc., transferred to the Bank of Los Angeles at Westwood substantial sums of money in excess of $50,000.00 against which withdrawals were made until April 1, 1955. There remained in the account at the Bank of Los Angeles at Westwood $21,555.59 in two trust accounts, as follows:

"Trust Fund No. 1.....................$19,055.59
"Trust Fund No. 2..................... 2,500.00
$21,555.59

"That these trust funds on April 1, 1955 were attached by the Bank of America in an action filed in this court entitled, *Bank of America National Trust & Savings Association, etc.* v. *Cole's Check Service, Inc.* (later changed to Leslie S.

Bowden, Trustee in Bankruptcy, when Cole's filed a voluntary petition in Bankruptcy) No. 642292.

"The funds were released to Leslie S. Bowden by virtue of an order of the Supreme Court of the State of California, 46 Cal.2d 863 [300 P.2d 10], and were declared to be trust funds belonging to the persons who deposited the same with Cole's Check Service, Inc. for the purpose of purchasing checks and paying bills.

"The funds were transferred by Leslie S. Bowden to R. E. Allen, the present receiver who has filed his Report and Second Account Current, to which this declarant is objecting. . . .

"The said $21,555.59 which was attached by the Bank of America contained declarant's $3908.35 and funds realized from deposits of checks from Pipermart, an agent of Cole's Check Service, Inc. and represented the return of moneys loaned by Cole's to Pipermart to use in the cashing of payroll checks. . . .

"That from January 3, 1955 to April 1, 1955 there were funds in the bank accounts of Cole's Check Service, Inc. in excess of declarant's claim of $3908.35." These allegations were not controverted.

█ It appears therefrom that appellant's funds did not become part of the trust created by section 12300.3, Financial Code, for they were not delivered in payment for a check or similar instrument purchased by appellant, or for the purpose of paying bills or accounts of appellant — merely for deposit in appellant's own bank account. However, this fact does not necessarily mean that the Fargo funds were not received and held by respondent receiver as a trust springing from familiar equitable principles.

Respondent's contention is that the order of the referee in bankruptcy was to the effect that "all the assets in bankruptcy were trust funds and that they should be turned over to me as the state court receiver," and that it was an in rem adjudication of the trust status of the funds received by Mr. Allen as receiver, citing *Myers* v. *International Trust Co.*, 263 U.S. 64 [44 S.Ct. 86, 68 L.Ed. 165]. █ That opinion says, at page 73: "An adjudication of bankruptcy, or of discharge therefrom, is a judgment in rem and is binding on, and res judicata as to, all the world, only in respect of the status of the bankrupt, and is not conclusive as to the findings of fact or subsidiary questions of law on which it is based except as between parties to the proceedings or privies thereto." The case is of doubtful application here. The referee's order may

have established the funds to be trust funds without determining the identity of the beneficiaries; but we find it unnecessary to decide the point for appellant's opening brief tells us: "The respondents rely upon the Court's Exhibit Number 1 as a complete defense to the objections of Joseph Fargo. Exhibit 1 is the Clerk's File and Judgment of the Superior Court for the Los Angeles County, No. 732983, entitled *Joseph Fargo* v. *R. E. Allen, Receiver.*"

■ That file is before us and it discloses the action to have been one brought by appellant Fargo against respondent Allen in his capacity as receiver of the funds involved in the present proceeding. Plaintiff's amended complaint alleges the same facts as his declarations in support of his claim in the instant proceeding. The receiver's general demurrer to that complaint was sustained without leave to amend on May 24, 1960, and judgment in favor of defendant entered pursuant to said ruling on June 13, 1960: "Now, therefore, it is ordered, adjudged and decreed: That plaintiff take nothing from defendant R. E. Allen by reason of his complaint, that the same is dismissed with prejudice as to defendant R. E. Allen and that the defendant R. E. Allen have and recover his costs herein expended in the sum of $12.50." No motion for new trial was made and no appeal taken.

Right or wrong, this judgment constitutes res judicata, operating as a bar to maintenance of appellant's claim here involved. ■ *DeMonbrun* v. *Sheet Metal Workers Intl. Assn.,* 140 Cal.App.2d 546, 554-555 [295 P.2d 881]: "The fact that the former judgment was based upon the sustaining of a demurrer to the complaint without leave to amend does not affect the foregoing conclusions. ■ *Keidatz* v. *Albany,* 39 Cal.2d 826, 828 [249 P.2d 264]: 'Since the former judgment was entered after a general demurrer had been sustained with leave to amend, it is necessary to determine the scope of the doctrine of res judicata in such circumstances. The procedural effect of such a judgment appears to be *sui generis.* It is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action, and will, accordingly, be a bar to a subsequent action alleging the same facts. [Citing cases.] Moreover, even though different facts may be alleged in the second action, if the demurrer was sustained in the first action on a ground equally applicable to the second, the former judgment will also be a bar. [Citing cases.] . . .' (To the same effect see *Crowley*

v. *Modern Faucet Mfg. Co.,* 44 Cal.2d 321, 323 [282 P.2d 33].) ''

The order is affirmed.

Fox, P. J., and Herndon, J., concurred.