[L. A. No. 29597. In Bank. June 16, 1969.]

ABE BOYLE, Plaintiff and Respondent, v. MARILEE JO HAWKINS, Defendant and Appellant.

Richard M. Hawkins for Defendant and Appellant.

Pray, Price, Williams & Russell, Pray, Price, Williams & Deatherage and William C. Price for Plaintiff and Respondent.

TOBRINER, J.—Plaintiff Abe Boyle brings this action under Code of Civil Procedure section 544[1] for wrongfully withholding property from a levy of garnishment. The crucial question in determining this cause is whether defendant Marilee Hawkins possessed or controlled certain funds at the time of the levy. In the superior court, a jury found that defendant possessed such funds at the time of the levy amounting to $6,359.11. The judgment appealed from favored plaintiff in this amount.[2] We hold that substantial evidence supports this finding and that the judgment should be affirmed.[3] Defendant-appellant Hawkins has assigned other errors on appeal, but we conclude that her contentions lack merit.

[1] "All persons having in their possession, or under their control, any credits or other personal property belonging to the defendant [judgment debtor], or owing any debts to the defendant at the time of service upon them of a copy of the writ and notice, as provided in this chapter, shall be, unless such property be delivered up or transferred, or such debts be paid to the sheriff, constable, or marshal, liable to the plaintiff for the amount of such credits, property, or debts, until the attachment or garnishment be released or discharged or any judgment recovered by him be satisfied.'' (Code Civ. Proc., § 544.)

[2] The action originally sought to impose liability under section 544 and Code of Civil Procedure section 720 upon Hawkins and the Charter Savings and Loan Association. The trial court granted a motion for nonsuit by Charter at the close of plaintiff's case and entered judgment accordingly. Despite plaintiff's brief which includes the argument that the granting of this nonsuit was error, the record does not show whether plaintiff filed a notice of appeal which would allow us to consider this purported appeal. (Cal. Rules of Court, rule 1(a).) Plaintiff's failure to file a timely notice to prepare a transcript pursuant to California Rules of Court, rule 4(a), prevents his raising the alleged error before this court. (*Beresford* v. *Pacific Gas & Elec. Co.* (1952) 113 Cal.App.2d 622 [248 P.2d 773].)

[3] We granted plaintiff Boyle's petition for hearing after the Court of Appeal affirmed by modifying the judgment from an award of $6,359.11 to an award of only $109.11. The Court of Appeal concluded that the evidence was insufficient to support the jury's verdict. Even if the Court of Appeal had correctly found that the evidence was insufficient to sustain the verdict, the Court of Appeal erred in modifying the judgment since the proper disposition should have been to remand the cause for retrial. Modification is improper in a case such as the present in which "the record does not clearly show what the correct judgment should be . . . .'' (3 Witkin, Cal. Procedure (1954) Appeal, § 184, p. 2379.) Before an appellate court may make new findings as the basis of a reversal, with directions to enter judgment for appellant (a disposition similar in effect to that which the Court of Appeal made in the present case), "it must appear from the record . . . that on no theory grounded in reason and justice could the party defeated on appeal make a further substantial showing in the trial court in support of his cause.'' (*Tupman* v. *Haberken* (1929) 208 Cal. 256, 269 [280 P. 970]; see *Lockheed Aircraft Corp.* v. *County of Los Angeles* (1962) 207 Cal.App.2d 119, 132 [24 Cal.Rptr. 316].) The ordinary disposition upon a finding by the appellate court that the evidence is insufficient to support the verdict is simply to reverse, giving the respondent a right to a new trial. Since

## The Facts[4] and Procedure

During the summer of 1963, the period during which the garnishment was levied upon the defendant, the plaintiff was involved in litigation[5] with his former wife Mary Hitchcock, in which he sought to recover a sum of money wrongfully converted by her. Mary Hitchcock and the defendant had been acquainted since 1959; during the summer of 1963 and previous thereto, they had both worked as legal stenographers in the law office of attorney Richard M. Hawkins, defendant's husband and attorney in this case. Attorney Hawkins represented Mary in her litigation with the plaintiff; he succeeded her original attorney, Robert G. Austin, attorney Hawkins's former associate who in 1964 abandoned private practice to join a city attorney's office. Believing that Mary had placed the converted funds with the defendant, plaintiff attempted to attach these funds by obtaining a writ of garnishment, and delivering the writ to a marshal with instructions to attach all monies and properties in the possession or under the control of the defendant belonging to Mary Hitchcock. The marshal levied the writ of garnishment upon the defendant on August 26, 1963, at 3:30 p.m. To this levy defendant answered that she was holding "zero" dollars belonging to Mary Hitchcock.

Plaintiff subsequently obtained a judgment plus costs against Mary Hitchcock in the amount of $6,022.71, entered on June 18, 1964. Plaintiff has recovered no part of this judgment. In pursuing the present action, plaintiff seeks to enforce defendant's liability under Code of Civil Procedure section 544 for her failure to deliver up the Hitchcock funds upon garnishment. The determinative question of fact turns on what funds, if any, belonging to Mary Hitchcock were in defendant's possession or under her control at the time the writ was levied.

On July 8, 1963, Mary Hitchcock withdrew $6,359.11 from the Community Savings and Loan Association; she gave this money to defendant "to keep for her." Defendant deposited

---

there is some conflict in the evidence, and since there is no indication that upon retrial the plaintiff would not be able to develop additional evidence in support of his cause, the Court of Appeal should not have departed from the normal rule that the plaintiff-respondent was entitled to a retrial.

[4]In stating the facts of this case, we do so without regard to the cause of action against Charter Savings and Loan Association and in a manner most favorable to plaintiff-respondent Boyle. (*Marshall* v. *Marshall* (1965) 232 Cal.App.2d 232, 236 [42 Cal.Rptr. 686], and cases cited.)

[5]Mary Hitchcock Boyle v. Abe Boyle, No. SO D-12485, Superior Court of Los Angeles County, filed July 22, 1963.

this sum of $6,359.11 in a savings account at the Farmers & Merchants Bank. On July 10, 1963, defendant withdrew $6,000 from this account and deposited it in a special interest account at the Charter Savings and Loan Association. Both of these accounts were in her own name. Of the $359.11 remaining in the Farmers & Merchants Bank on July 10, 1963, defendant withdrew $250 before the writ was levied, leaving $109.11 on August 26, 1963.

At trial, defendant took the stand and described the events surrounding the levy of garnishment. She stated that she went to the Charter Savings and Loan Association on Friday, August 23, 1963, just prior to closing time at 6 p.m. and obtained a check payable to her own order for $6,000. She took this check to a nearby branch of the United California Bank and obtained $6,000 cash. She further testified that upon receipt of the cash she walked across the street to her car and waited until Mary Hitchcock came by, at which time she gave Mary the cash. Thereafter, on the following Monday, August 26, 1963, at 3:30, the marshal levied the writ of garnishment to which she responded that she held "zero" dollars belonging to Mary Hitchcock.

Mary Hitchcock subsequently took the stand at trial and testified that she received the cash from defendant during the afternoon "around 3:00" on Friday, August 23, 1963. She stated that she received the money in front of the Charter Savings and Loan Association, but admitted stating at an earlier examination that she received the money from defendant at attorney Hawkins's office in Long Beach. She stated at trial that she had changed her testimony "after refreshing my memory" by speaking with defendant, among others, about the matter.

Mary testified that she gave attorney Robert Austin $1,000 in cash that same afternoon as payment for his services in connection with her suit against the plaintiff. Austin corroborated her remarks and submitted a ledger sheet from his office files which contained a recording of this payment and the date.

The documentary evidence was quite confusing. The Charter "Savings Withdrawal Ticket" prepared by defendant—although dated by her "August 23, 1963"—reveals a bank stamp indicating "August 26, 1963." Furthermore, the bank ledger card from Charter apparently shows that the account was closed on August 26, 1963. The cashier's check prepared at Charter and cashed at the United California Bank, how-

ever, is dated "August 23, 1963" and is stamped to indicate that the check was cashed on that date. A teller from the latter bank testified to this effect.

In addition to the conflict between the statements of defendant and Mary Hitchcock with respect to the time and place of delivery of the $6,000, both were impeached by contradiction on other occasions. The plaintiff also introduced evidence of certain "background material" tending to show a "conspiracy"[6] among defendant, Mary Hitchcock, and attorney Hawkins, to deprive plaintiff of satisfaction of his judgment in the earlier action against Mary Hitchcock. From his association with attorney Hawkins and from his role as attorney for Mary Hitchcock in this earlier suit, Robert Austin was implicated by inference in this "conspiracy." This "background material" tended to show a bias against the plaintiff and a motive for certain persons, including the defendant, to prevaricate at trial; it also tended to show that defendant possessed a motive for making a false return to the writ of garnishment.

At the close of plaintiff's case the defendant moved for a nonsuit; the court denied this motion. After the jury returned a verdict for plaintiff, the court entered judgment accordingly, denying a motion for new trial.

SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE VERDICT

The defendant argues that the evidence was insufficient as a matter of law to support the jury verdict that she held $6,359.11 for Mary Hitchcock at the time the writ of garnishment was served on her. ▇ In reviewing evidence on appeal, an appellate court will not disturb a verdict if the evidence which supports it is in conflict. The presumption is in favor of the judgment, and the appellate court must consider the evidence in the light most favorable to the prevailing party. All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict. (3 Witkin, Cal. Procedure (1954) *supra,* Appeal, § 84 et seq., pp. 2245-2257, and cases cited.)

▇ With respect to the $6,000 withdrawn from Charter at the approximate time of the levy of garnishment, we conclude that substantial evidence supports the jury finding that the

[6]We do not intend, by the use of this word, to suggest that there was, in fact, such a conspiracy, or even that an action would lie for fraud. The plaintiff did introduce evidence, however, which *tended* to show a conspiracy; the jury was entitled to take this into account in assessing the veracity of certain witnesses' testimony at trial.

defendant possessed or controlled this sum at the time of the levy. The jury was, of course, entitled to disbelieve all of the testimony favorable to defendant. In fact, defendant's "friendly" witnesses (excepting the bank teller at the United California Bank) were impeached either by contradiction or by implication in the "conspiracy" to deprive the plaintiff of satisfaction of his judgment against Mary Hitchcock. On the other hand, the jury was entitled to believe portions of this testimony which tended to support an inference favorable to the plaintiff. Recognizing this, we have concluded that the evidence in this case supported the inference that defendant possessed or controlled the funds when the writ was levied upon her.

The marshal levied the writ at 3:30 p.m. on Monday, August 26. Defendant testified that she withdrew the funds on Friday, August 23 at 6 p.m. and transferred them immediately to Mary Hitchcock. The savings account ledger card and the deposit withdrawal ticket from Charter indicated that funds were withdrawn on Monday, August 26.[7] The jury could reasonably have believed that the transfer of the funds to Mary Hitchcock occurred on Monday, August 26, at 6 p.m., after the writ was levied.

Alternatively, even if the jury believed that the funds were withdrawn on Friday and converted into cash on that date, it could reasonably have believed that defendant had not transferred the funds to Mary Hitchcock by 3:30 p.m. on Monday, when the writ was levied. The jury was entitled to disbelieve defendant's and Mary Hitchcock's accounts of the transfer. This disbelief in itself, however, would provide no direct evidence supporting a finding that defendant possessed or controlled the funds at the time of the levy. Nevertheless, certain indirect evidence remains. █ The fact that defendant possessed the funds on Friday creates an inference that she continued to possess the funds on Monday.

In the absence of other factors, however, we would normally call such an inference unreasonable and hold that the evidence was insufficient to support it. In the present case, there exists

---

[7]The documentary evidence was conflicting. The documents relating to the savings account indicated that the withdrawal occurred on Monday, while the cashier's check indicated that the withdrawal occurred on Friday. In resolving this conflict the jury was entitled to disregard the cashier's check for the purpose of drawing inferences from the documentary evidence. Indeed, nothing in the record requires the conclusion that the cashier's check represented a withdrawal from the Charter account.

evidence other than that above set forth: evidence of machinations to preclude plaintiff from reaching these funds. Specifically, Mary Hitchcock admitted at trial that she knew plaintiff was trying to attach funds belonging to her. The jury could reasonably have accepted the following sequence of events: that, while Mary Hitchcock knew there were writs of attachment outstanding on August 23, she did not know to whom these writs were addressed; that she asked defendant to remove the funds from Charter to avoid their being attached at the bank; that defendant did so, but kept the funds in cash in her possession and under her control rather than return the funds to Mary Hitchcock upon whom one of the writs of attachment might have been levied.

These inferences are supported by the evidence; they are not contrary to human experience and reason, and thus cannot be ignored by an appellate court. Under this view of the case, the finding that defendant possessed or controlled the $6,000 at the time the writ of garnishment was levied finds support in substantial evidence.

■ With respect to the $359.11 remaining in defendant's account at the Farmers & Merchants Bank after she withdrew $6,000 for deposit with Charter, we conclude that substantial evidence supports the jury's finding that defendant possessed or controlled this sum when the writ of garnishment was levied. Plaintiff adduced direct documentary and testimonial evidence to support the finding that $109.11 remained in this account at the time of the levy. Defendant withdrew $250 prior to the levy, however, and argues on appeal that no evidence supports the finding that she still possessed or controlled this sum at the time the writ was levied. Defendant misunderstands the mechanics of the garnishment procedure. Only if the defendant had returned the $250 to Mary Hitchcock, or had otherwise legitimately cancelled her debt to this extent before the writ was levied, would she escape liability for this sum under Code of Civil Procedure section 544. Section 544 specifically includes "any debts [owing] to the [judgment debtor, here Mary Hitchcock] at the time of service."

Evidence in the record supports the finding that defendant never returned this amount to Hitchcock or otherwise cancelled the debt: Counsel for plaintiff asked defendant whether she had given the money "that was drawn out in smaller amounts" to Mary Hitchcock. This could only have referred to the funds in the Farmers & Merchants account since there

was no evidence introduced relating to other accounts from which small amounts had been withdrawn. Defendant replied that she did not give these funds to Mary. This statement was consistent with defendant's assertion that she received only $6,000 from Mary Hitchcock. Documentary evidence supported the inference that defendant received an additional $359.11 from Mary, and the jury could reasonably have believed that defendant had made no repayment or accounting of this latter sum at the time the writ of garnishment was levied.

Thus, substantial evidence supports the verdict awarding plaintiff damages in the amount of $6,359.11.

### BASIS OF LIABILITY

Defendant argues that her liability under Code of Civil Procedure section 544 terminated three years after the issuance of the writ (July 1966) at which time the garnishment was "released" pursuant to section 542b.[8] Without benefit of section 544, the plaintiff could only recover pursuant to Code of Civil Procedure section 720,[9] which requires service of a writ of execution. (Code Civ. Proc., § 717.) Since no such writ of execution has been served, defendant contends that there is no legal basis for defendant's asserted liability.

Defendant's liability rests upon section 544 for her failure to deliver Mary Hitchcock's funds (or transfer her debt to Mary) to the marshal at the time of levy. ██ "By the express terms of section 544 persons indebted to the judgment debtor are, upon receiving notice that such debts are attached, made directly liable to the attaching creditor." (*Farmers & Merchants Bank of Los Angeles* v. *Bank of Italy* (1932) 216 Cal. 452, 454 [14 P.2d 527].) "[T]he judgment creditor may

---

[8]"An attachment or garnishment on personal property, whether heretofore levied or hereafter to be levied, shall, unless sooner released or discharged, cease to be of any force or effect and the property levied on be released from the operation of such attachment or garnishment, at the expiration of three years after the issuance of the writ of attachment under which said levy was made; and the property levied on shall be delivered to the defendant or his order or to his assignee or executor or administrator." (Code Civ. Proc., § 542b.)

[9]"If it appears that a person or corporation, alleged to have property of the judgment debtor, or to be indebted to him, claims an interest in the property adverse to him, or denies the debt, the judgment creditor may maintain an action against such person or corporation for the recovery of such interest or debt; and the judge or referee may, by order, forbid a transfer or other disposition of such interest or debt, until an action can be commenced and prosecuted to judgment. Such order may be modified or vacated by the judge or referee granting the same, or the court in which the action is brought, at any time, upon such terms as may be just." (Code Civ. Proc., § 720.)

proceed directly against the garnishee by an action at law based upon the latter's statutory liability, and an examination of the garnishee is not a prerequisite to the action. Nor is execution a necessary preliminary." (Fns. omitted.) (5 Cal. Jur.2d Rev. (1967) Attachment and Garnishment, § 129, p. 918, and cases cited.)

A garnishee's liability to the attaching creditor continues under section 544 until the judgment recovered by him against the judgment debtor is satisfied, or until the garnishment is released or discharged. Plaintiff Boyle's judgment has not been satisfied; nor has the garnishment been discharged. Defendant contends, however, that under the terms of section 542b the garnishment was "released" by operation of law on July 22, 1966, three years after the issuance of the writ.

Defendant cannot successfully urge that her liability under section 544 has expired in this case because the plaintiff filed his complaint on May 5, 1965, well before the three-year period of section 542b had run. The filing of a complaint under section 544 must prevent the "release" time from running for purposes of the liability imposed by that section; otherwise, a defendant could always frustrate the imposition of liability by a skillful application of the motion and discovery practices for purposes of delay. Thus, the three-year period of section 542b is analogous to a statute of limitations for actions under section 544. Defendant cannot avoid the direct imposition of liability under section 544 in the present case since the plaintiff has filed a timely complaint.

ADMISSIBILITY OF EVIDENCE SHOWING BIAS

The defendant contends that the trial court erred in admitting evidence tending to show that the defendant, Mary Hitchcock, and others, "conspired" to deprive plaintiff of satisfaction of his judgment against Mary Hitchcock. The evidence, however, was highly relevant to attack the credibility of certain witnesses by showing bias. As a general rule, evidence is admissible to show a witness's bias, interest, or corrupt motives. (Evid. Code, § 780, subd. (f); 3 Wigmore, Evidence (1940) § 945 et seq.) Nor do we find any indication in the present case that the prejudicial impact of the evidence involved outweighed its probative value.

ERRONEOUS INSTRUCTION

The defendant complains that the following instruction was erroneous: "If you find . . . that the defendant

Marilee Jo Hawkins had in her possession or under her control any credits or other personal property which was held for Mary E. Hitchcock at the time of service upon her of a copy of a Writ of Attachment on behalf of plaintiff Abe Boyle, and such property was not delivered up or transferred to, or such debts paid, to the Sheriff, Constable or Marshal, then you shall find against the defendant and return a judgment in favor of plaintiff Abe Boyle *in such sum as she then had in her possession or under her control.*" (Italics added.) The defendant objects to this instruction on the ground that, despite its conformity with the wording of section 544, the trial court allowed the jury to bring in a verdict for an amount in excess of the plaintiff's judgment against the judgment debtor, Mary Hitchcock. Thus, the jury could have awarded plaintiff a recovery in excess of his injury.

 Defendant correctly asserts that the limit of the garnishee's liability under section 544 coincides with the amount of the judgment obtained by the plaintiff against the judgment debtor. (*Robinson* v. *Tevis* (1869) 38 Cal. 611, 614.) Thus, had defendant held $100,000 belonging to Mary Hitchcock when the writ was levied, the plaintiff could recover no more than the damages from his inability to recover the smaller judgment against Mary. Nevertheless, under the facts of this case, the jury verdict did not exceed the plaintiff's rightful recovery, and the questioned instruction, if erroneous, was plainly harmless. Plaintiff's judgment against Mary Hitchcock amounted to $6,022.71. To the extent of the funds belonging to Mary which were held by defendant when the garnishment was levied upon her, the plaintiff may recover not only the face amount of this judgment, but also he may recover interest on the judgment running from the date of its entry, June 18, 1964.[10] Since the verdict of $6,359.11 falls short of $6,022.71 plus the accrued interest,[11] defendant cannot complain of an instruction which resulted in no prejudice to her case.

[10]Plaintiff's right against defendant to interest became choate on the date of judgment of his action against Mary Hitchcock, at which time defendant's liability under Code of Civil Procedure section 544 ceased to be contingent. Thus, interest runs from the date of that judgment, June 18, 1964, and not from the date of garnishment. (*Walters* v. *Bank of America* (1937) 9 Cal.2d 46, 58 [69 P.2d 839, 110 A.L.R. 1259]; *Axe* v. *Commercial Credit Corp.* (1964) 227 Cal.App.2d 216, 224-225 [38 Cal. Rptr. 558].)

[11]At the time of the verdict in the present case, the amount due on plaintiff's judgment against Mary Hitchcock exceeded $7,000.

#### Judgment in Excess of Prayer

 Defendant argues that the judgment in this case was in excess of plaintiff's prayer for relief contained in his complaint; as such, the judgment would be erroneous as a matter of law. The judgment, however, did not exceed the prayer; rather, the prayer exceeded the judgment. Plaintiff prayed for damages against defendant in the amount of $6,022.71 "together with interest thereon . . . from the date of June 18, 1964." As we noted in the previous section of this opinion, this prayed for amount exceeded the actual verdict and judgment for $6,359.11.

The defendant cannot show any error in the proceedings below which would justify our reversal of the judgment. The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Appellant's petition for a rehearing was denied July 16, 1969.