Opinion
GOLDBERG, P. J.
This is, apparently, the first case in California in which jurisdiction has been predicated on Seider v. Roth (1966) 17 N.Y.2d 111 [269 N.Y.S.2d 99, 216 N.E.2d 312]. To our knowledge it is the first case outside of New York that accepts, rather than rejects, Seider. Seider and the cases following it hold that jurisdiction quasi in rem may be *Supp. 13 obtained by attaching as property of a nonresident defendant, over whom jurisdiction in personam cannot be obtained, his right under a liability insurance policy to have an insurer defend and indemnify him on the claim out of which the suit arises. In other words, the plaintiff may sue not only in any state where he may obtain jurisdiction over the insured defendant, but also in any state where he may obtain jurisdiction over the defendant’s insurer. It is convenient to think of the problem in two parts: (1) does the state have jurisdiction? and (2) if it does, has it provided a mode of exercising it?‘We answer both questions in the affirmative. For the answer to the first we rely primarily on Code of Civil Procedure section 410.10 and Minichiello v. Rosenberg (2d Cir. 1968) 410 F.2d 106, the most complete discussion of Seider we have found. For the answer to the second we rely primarily on Code of Civil Procedure sections 537, 542, subdivision 5, and 544; Ponsonby v. Suburban Fruit Lands Co. (1930) 210 Cal. 229 [291 P. 167]; Brainard v. Rogers (1925) 74 Cal.App. 247 [239 P. 1095] and its New York counterpart, Baumgold Bros. v. Schwarzschild Bros. (1949) 276 App.Div. 158 [93 N.Y.S.2d 658]; and Keck v. Superior Court (1972) 3 Civ. 13521, an unpublished opinion of the Court of Appeal, and its New York counterpart, Matter of Riggle (1962) 11 N.Y.2d 73 [226 N.Y.S.2d 416, 181 N.E.2d 436]. We do not hold that the court below must exercise this jurisdiction, because a motion to stay or dismiss on the grounds of an inconvenient forum either could have been made, Code of Civil Procedure section 410.30, or may possibly be made hereafter, id. section 410.30, subdivision (b) as added by California Statutes 1972, chapter 601, section 1. Since this case “involves a legal issue of continuing public interest” within the meaning of California Rules of Court, rule 976(b)(2), we have certified it for publication.
The Turners, plaintiffs and appellants, are residents of California. On October 25, 1971, while temporarily in Tacoma, Washington, they took their 1969 Austin America to University Mobil Service, operated by the defendant and respondent Evers to be serviced for their return trip to California. Evers released the car to the Turners on October 26, but they allege that they drove it only three miles before “it became totally inoperative.” The Turners claim that Evers failed to service the car properly and that they sustained $685.16 in damages for repairs and loss of use for 22 days. They have three separate theories of recovery: breach of contract, fraud, and negligence. On the fraud count they seek both their actual damages and punitive damages of $5,000. But they kept the case within the monetary jurisdiction of the municipal court by an express remission in the complaint of their right to recover more than $5,000 total. (Cf. Williams v. Rosinsky Motor Co. (1955) 133 Cal.App.2d Supp. 798, 803 [284 P.2d 979].)
*Supp. 14 A summons was served on the Mobil Oil Corporation, and it has appeared generally by answering on the merits. (Code Civ. Proc., § 1014.) A summons was served on Evers by mail in Tacoma, Washington. (Id. § 415.40.) The plaintiffs obtained a writ of attachment pursuant to id., section 537, subdivision 2 (action against a nonresident on a contract), directing the attachment of “property of defendant,” and specifically, the garnishment in the hands of the Travelers Indemnity Company (Travelers) of “said liability insurer’s contractual obligation to defend and indemnify defendant’s [Evers] debt owing [to the plaintiffs].” The Marshal of Los Angeles County filed a garnishment return stating he had so attached the “obligation to defend and indemnify the within named defendant Robert L. Evers. . . .” The marshal states that he “demanded a statement in writing from the garnishee which, if received, is attached.” (Code Civ. Proc., § 546.) None, however, is attached, and on the record it thus appears that Travelers made no answer to the marshal at the time of service. (Cf. Clyne v. Easton, Eldridge & Co. (1905) 148 Cal. 287, 295 [83 P. 36].) Nor, as far as the record shows, did it deny its liability thereafter as permitted by section 546. (Compare Dawson v. Bank of America (1950) 100 Cal.App.2d 305, 306 [223 P.2d 280] and Takahashi v. Kunishima (1939) 34 Cal.App.2d 367, 373-374 [93 P.2d 645.) Thus for the purposes of the case up to this point Travelers’ liability to Evers is not disputed. Evers, however, made a motion to quash by which he challenged both personal jurisdiction over him and jurisdiction quasi in rem, relying on his declaration that he neither did business nor had property in this state. This motion was granted and the Turners appealed. (Code Civ. Proc., § 904.2, subd. (d).)
Evers’ motion to quash may pose a paradox. The plaintiffs concede that there is no basis of in personam jurisdiction over Evers. Both the complaint and the summons, which was in the ordinary statutory form approved by the Judicial Council pursuant to Code of Civil Procedure section 412.20, seem to contemplate the exercise of in personam jurisdiction. Therefore, it might seem that Evers’ motion to quash should have been granted “on the grounds of lack of jurisdiction of the court over him.” (Code Civ. Proc., § 418.10, subd. (a)(1).) But if Evers were thus dismissed from the action, the court would also lose jurisdiction quasi in rem. In this state an action quasi in rem is personal in form, although it is not personal in the sense that it can result in a judgment that may be satisfied out of any property of the defendant other than that attached. (First National Bank v. Eastman (1904) 144 Cal. 487, 491-492 [77 P. 1043].) The garnishee is not a party to the action. “Under our attach *Supp. 15 ment law a garnishee is not required and has no right to appear in the action.” (Clyne v. Easton, Eldridge & Co., supra, 148 Cal. at p. 295.) As in New York the defendant must be named as a party “as a conduit . . . to provide a conceptual basis for getting at the insurer.” '(Minichiello v. Rosenberg, supra; 410 F.2d at p. 109.) Thus by dismissing the defendant, without more, the court would, in effect, discharge the attachment.
The existence of the paradox depends on the interpretation of the phrase, “lack of jurisdiction over him,” in Code of Civil Procedure section 418.10, subdivision (a)(1). Does it mean “lack of jurisdiction over him personally?” or “lack of jurisdiction over him personally or over his property?” We believe that the proper construction is the latter, because it eliminates the paradox and is supported by the Judicial Council’s comments on the section, i.e., “The ground for granting a motion to quash process on a defendant ... is that the court lacks jurisdiction over him because . . . there is no basis of judicial jurisdiction existing between such defendant and this state . . . .” (Li, Attorney’s Guide to California Jurisdiction and Process (Cont.Ed.Bar 1970) § 1.38 at p. 95.) The presence of the defendant’s property here is, of course, a basis of judicial jurisdiction. Indeed some courts in similar cases have used such apparently incongruous but actually descriptive phrases as: “the obligation of the insurer ... enables the New York courts to exercise jurisdiction in rem over him [the defendant],” Simpson v. Loehmann (1967) 21 N.Y.2d 305 [287 N.Y.S.2d 633, 234 N.E.2d 669, 670, 33 A.L.R.3d 979]; and “if jurisdiction is acquired over the insurer . . . there is quasi in rem jurisdiction over out-of-state residents.” (Beja v. Jahangiri (2d Cir. 1972) 453 F.2d 959, 961.) Mr. Witkin says that the defendant cannot defeat quasi in rem jurisdiction by a special appearance to quash service on him “because the court does in fact have jurisdiction of his property as a result of the attachment or other seizure and can render a valid judgment enforceable against the property.” (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 167 at pp. 696-697.) He cites no California cases, but the proposition is supported by cases elsewhere (Avery v. Bender (1964) 124 Vt. 309 [204 A.2d 314]; State v. District Court (1968) 79 N.M. 33 [439 P.2d 551]). It is also supported by the actual results in Minichiello v. Rosenberg (410 F.2d 106) and Beja v. Jahangiri (453 F.2d 959) both supra, the one being a motion to dismiss and the other a motion to vacate the attachment. The courts found no occasion to distinguish the two procedures.
The motion here should be treated as the parties have actually treated it, i.e., as a motion to quash the attachment. (Frederickson v. Superior *Supp. 16 Court (1952) 38 Cal.2d 593, 598 [241 P.2d 541].) It is not a motion to discharge under Code of Civil Procedure section 556, because there is no charge that the writ was irregularly or improperly issued or that this is a case in which an attachment could not be issued. A motion to quash the attachment, as distinguished from a motion to discharge it under section 556, lies to assert that the property is not subject to. attachment. (Property Research Financial Corp. v. Superior Court (1972) 23 Cal. App.3d 413, 416 [100 Cal.Rptr. 233]; Burke v. Superior Court (1969) 71 Cal.2d 276, 279, fn. 3 [78 Cal.Rptr. 481, 455 P.2d 409]; cf. Hustead v. Superior Court (1969) 2 Cal.App.3d 780, 784 [83 Cal.Rptr. 26].) Such a motion may be made by a special appearance. (Root v. Superior Court (1942) 209 Cal.App.2d 242, 246 [25 Cal.Rptr. 784].) And the order on such a motion is appealable under Code of Civil Procedure section 904.2, subdivision (f). (Bank of America v. Bowden (1956) 46 Cal.2d 863, 864, fn. 2 [300 P.2d 10].) If the attachment is not discharged, under the more recent authorities the defendant may still defend on the merits of the claim without submitting himself to personal jurisdiction. (Minichiello v. Rosenberg, supra, 410 F.2d at p. 111; Rest., Judgments (1942) §40; 1 Witkin, Cal. Procedure, Jurisdiction, supra, at pp. 696-697). If the defendant remains apprehensive that a judgment against him may be given , an in personam effect, he should be able to protect himself by appropriate recitals therein. (Note (1950) 63 Harv.L.Rev. 657, 658, fn. 9.) We treat the order below as one quashing the attachment and hold that it was improperly granted.
The constitutionality of the Seider practice has not been successfully challenged. To paraphrase Judge Friendly, the argument of unconstitutionality is “unpersuasive so long as Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905) stands.” (Minichiello v. Rosenberg, supra, 410 F.2d at p. 118.) The New York cases have referred to the policy obligation as a “debt,” and hold “the presence of that debt in this state . . . contingent or inchoate though it may be—represents sufficient of a property right in the defendant to furnish the nexus with, and the interest in, New York to empower its courts to exercise an in rem jurisdiction over him.” (Simpson v. Loehmann (1967) 21 N.Y.2d 305 [287 N.Y.S.2d 633, 234 N.E.2d 669, 671].) The United States Supreme Court has at least twice declined to review this proposition. (Victor v. Lyon Associates, Inc. (1967) 21 N.Y.2d 695 [287 N.Y.S.2d 424, 234 N.E.2d 459], appeal dismissed for want of a substantial federal question (1968) 392 U.S. 8 [89 S.Ct. 44, 21 L.Ed.2d 8]; Minichiello v. Rosenberg (2d Cir. 1968) 410 F.2d 106, cert. den. (1969) 396 U.S. 844 [90 S.Ct. 69, 24 L.Ed.2d 94].)
In the face of Code of Civil Procedure section 410.10, the respondent *Supp. 17 appears to argue that this state has not authorized the exercise of the Seider sort of jurisdiction. (Cf. Rest. 2d Conflicts, § 68 (1971) com. b at p. 211.) Section 410.10 provides: “A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States,” No broader grant of jurisdiction can be made in this nation. From the plain language of the statute it is obvious that if New York has jurisdiction in a Seider type case, so does California. Although not directly involved, one of the Judicial Council’s comments on section 410.10 is particularly instructive. (These comments were adopted by the Legislature as reflecting its intent. Li, Attorney’s Guide to California Jurisdiction and Process (Cont.Ed.Bar 1970), supra, pp. 12-13.) The Judicial Council said of section 410.10: “This authorization continues the California law on jurisdiction over foreign corporations and reestablishes the prior law that once governed nonresident individuals.” (Li, supra, at p. 14.) The reference to the prior law is to that antedating De la Montanya v. De la Montanya (1896) 112 Cal. 101 [44 P. 345], And the lesson is that we should eschew an approach such as that in Pinon v. Pollard (1945) 69 Cal.App.2d 129 [158 P.2d 254], reviving or continuing or creating self-imposed restrictions on the existence of jurisdiction that are not required by the Constitution, and thus we avoid the necessity of legislative and judicial emendations over a period of years. (Smith v. Smith (1955) 45 Cal.2d 235, 241 [288 P.2d 497]; 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 90.)
The respondent argues that Harris v. Balk, supra, 198 U.S. 215 is not in point, because there the existence of the garnishee’s indebtedness to the defendant was admitted whereas here it is not. As already pointed out, however, the garnishee has not denied its obligations to defend the defendant. And even if it had, such a denial would not defeat jurisdiction. The defendant claims that “he has upon the filing of civil suit a vested right to a defense in the suit.” If the garnishee fails to fulfill this claimed obligation, or if it is unsuccessful in the defense, the plaintiff may then proceed to attempt to collect from the garnishee by a separate action under Code of Civil Procedure section 544. (Boyle v. Hawkins (1969) 71 Cal.2d 229 [78 Cal.Rptr. 161, 455 P.2d 97].) In such an action the garnishee may then assert whatever defenses it has against the defendant under the general rule that “an attachment or execution creditor acquires only the action interest of the debtor.” (Watwood v. Steur (1949) 89 Cal.App.2d 620, 623 [201 P.2d 460]; Clyne v. Easton, Eldridge & Co. (1905) 148 Cal. 287, 298 [83 P. 36].) There is no valid reason why the purpose of the garnishment statutes “should be defeated because the amount due the principal defendant is made uncertain by a claim to a part of the fund by the *Supp. 18 garnishee.” (Brunskill v. Stutman (1960) 186 Cal.App.2d 97, 106 [8 Cal.Rptr. 910].)
Even if Seider is constitutional, it is said to be illogical. In a delicate understatement Judge Friendly says it has “received a poor press from the commentators.” (Minichiello v. Rosenberg, supra, 410 F.2d at p. 108.) The most vociferous and persevering of its critics has been Professor David Siegel, whose comments, now numbering eight, have appeared annually in the supplements to New York Civil Practice Law and Rules section 5201 in McKinney’s Consolidated Laws of New York. Professor Siegel proceeds from the hypothesis that “the obligation to indemnify implies a valid in personam judgment against the insured.” (N.Y. Civ. Pract. Law & Rules, § 5201, 1965 com. pt. I, at p. 70 (McKinney Supp. (1972)).) We have not been given a copy of the policy in the instant case. However, from the respondent’s reliance on the dissent in Seider we assume that the policy is substantially the same as in that case, i.e., it obligates the insurer to defend on any action brought for an occurrence within the policy, 216 N.E.2d at page 314, and that the obligation attached, as the defendant says here, “upon the filing of civil suit.” Such an obligation is not clearly limited to defense of actions in personam. Had any other property of the defendant been attached, other than his rights under the policy, e.g., his rights against a debtor who happened to be casually present in California, as in Harris v. Balk, supra, 198 U.S. 215, the defendant would certainly have been entitled to have the insurer defend, and to be indemnified if the debtor had been required to pay the plaintiff. We disagree with the proposition that the “obligation to indemnify requires a valid in personam judgment against the insured,” and hold the obligation to indemnify requires only the possibility of a valid judgment either against the insured personally or depriving him of his property. We find nothing that says that the insured’s right to a defense must be owed to him by one person and the right defended owed by him to another.
“The root question is,” as Professor Siegel says elsewhere, “is either the obligation to defend or to indemnify property within the meaning of [the attachment statute]?” (N.Y. Civ. Pract. Law & Rules, § 5201, 1965 com. pt. I, at p. 68 (McKinney Supp. (1972)).) The respondent seeks to by-pass the question of whether the insured’s rights are “property” by arguing that those rights are not “debts” owed him and that only “debts” can be attached.[1] The argument is not in point for several reasons.
*Supp. 19 The first is that although the argument seems appropriate in that Seider does hold that the attachment was permissible because “the policy obligation is a debt owed to the defendant by the insurer,” 216 N.E.2d at page 315, actually Seider does not depend on attachment of a debt as distinguished from other property. In Simpson v. Loehmann, supra, 234 N.E.2d at page 671 the court spoke of the “debt” as a sufficient “property right” to support in rem jurisdiction over the defendant. The New York attachment statutes allow the attachment of either “debts” or “property.” (N.Y. Civ. Pract. Laws & Rules, § 5201 (McKinney (1963)).) And in Glassman v. Hyder (1968) 23 N.Y.2d 354 [296 N.Y.S.2d 783, 244 N.E.2d 259, 261] the court said of both Seider and Simpson: “Those cases depend upon the construction that an indemnitor’s duty to defend is a present duty and, therefore, a current asset. Notably, in those cases, there was no special effort made by the majority to classify contractual duties as between debt and property, although, to be sure, it was said in the Seider case that ‘as soon as the accident occurred there was imposed ... a contractual obligation which should be considered a “debt” within the meaning of CPLR § 5201 and § 5202.’ ” Glassman held there was no “present duty” to pay future rents and so they could not be attached. It has been followed in California. (Hustead v. Superior Court (1969) 2 Cal.App.3d 780, 786 [83 Cal.Rptr. 26].) It makes clear that the test in Seider was not “debt” as distinguished from other “property,” but whether there was property in existence at the time of the attachment. (Cf. Hustead v. Superior Court, supra, 2 Cal.App.3d 780, at p. 785.) In this case respondent has conceded that the insurer was obligated to defend as soon as the suit was filed, and it is that obligation, which existed at the time of the attachment, that has been attached.
A more technical reason for holding that the argument that the obligation to defend is not a debt is not in point is that there has been no effort to attach a “debt” here. There is a distinction between attaching a garnishee as a debtor of the defendant and attaching him as the custodian of other property of the defendant. (Bowie v. Union Bank (1970) 11 Cal.App.3d 807, 815 [90 Cal.Rptr. 103].) It was held long ago that a notice of garnishment of “effects” was not sufficient to garnish a “debt.” (Clyne v. Easton, Eldridge & Co. (1905) 148 Cal. 287, 293-294 [83 P. 36]; Bowie v. Union Bank, supra, 11 Cal.App.3d at p. 816.) Here the direction in the writ was to attach “property” by serving notice of garnishment of the obligation to defend, and that obligation is all that was attached.
*Supp. 20 The principal vice in the argument that the insurer’s obligation is not a “debt” is that it ignores the California statutes. Those statutes as they now exist and will hereafter exist are not limited to the attachment of “debts” but extend to “property” of nonresident defendants. (Code Civ. Proc., § 537.) To the extent that “debts” are mentioned, it is as an alternative to “property.” E.g., the levy may be made on the person “owing such debts, or having . . . under his control such . . . personal property. . . .” (Code Civ. Proc., § 542, subd. 5. See also Code Civ. Proc., §§ 537.1, subd. (b), 537.2, subd. (d) and 537.3, subd. (c), Stats. 1972, ch„ 550, § § 3, 4 and 5.) The respondent does not challenge the constitutionality of the prejudgment attachment of property of nonresidents. (Banks v. Superior Court (1972) 26 Cal.App.3d 143 [102 Cal.Rptr. 590]; Damazo v. MacIntyre (1972) 26 Cal.App.3d 18 [102 Cal.Rptr. 609].)
“Property” as used in what is presently the third numbered subparagraph of Code of Civil Procedure section 537 has been given an extremely comprehensive meaning. This paragraph states a type of case in which an attachment may issue, i.e., an action against a nonresident for “damage to property in this state.” In interpreting the predecessor of this paragraph Ponsonby v. Suburban Fruit Lands Co. (1930) 210 Cal. 229, 232 [291 P. 167] held that property “when unqualified is sufficiently comprehensive to include every species of estate, both real and personal, whether choate or inchoate . . .” and includes “all that is one’s own, whether corporeal or incorporeal.” There is nothing to indicate that the same expansive definition should not be given to the same word as it appears in the introductory paragraph of section 537 or section 542, subdivision 5, referring to the property that may be attached. “It seems unlikely that the Legislature would have used the same word in such close juxtaposition with . . . widely different meanings.” (Bady v. Detwiler (1954) 127 Cal.App.2d 321, 326 [273 P.2d 941].)
The Ponsonby definition has been applied in a variety of circumstances, e.g., to the definition of the word “estate” in Probate Code section 301. (Estate of Glassford (1952) 114 Cal.App.2d 181, 189-190 [249 P.2d 908].) In Keck v. Superior Court, 3 Civil 13521 (unpublished opn. filed Nov. 14, 1972), a personal injury plaintiff procured the appointment of an administrator for a nonresident decedent in order to be able to proceed against the decedent’s insurer. The Court of Appeal accepted the concession of counsel that a “policy of indemnity insurance, although intangible in nature comprises 'an estate’ to be administered,” citing Estate of Muller (1969) 2 Cal.App.3d 259, 278 [82 Cal.Rptr. 531], and Note (1960) 12 Stan.L.Rev. 668. See also Restatement Second of Conflicts of Laws section 314, *Supp. 21 comment i (1971). The presence of an estate is commonly said to be a jurisdictional requirement in probate proceedings. (Gordon v. Shea (1938) 300 Mass. 95 [14 N.E.2d 105, 107], 4 Witkin, Summary of Cal. Law (7th ed. 1960), Wills and Probate, § 161 at p. 3152; but see Rest. 2d Conflicts of Laws, supra, § 314, com. b.) Since jurisdiction of the subject matter cannot be conferred by consent, 1 Witkin, California Procedure (2d ed. 1970) Jurisdiction section 10, Keck amounts to a holding that the right of the nonresident decedent against his insurer is sufficient property to confer probate jurisdiction. If such right against the insurer is enough for probate jurisdiction, it is also enough to support an attachment. This, indeed, is the basis of Seider, which relied on the New York counterpart of Keck, Matter of Riggle’s Estate (1962) 11 N.Y.2d 73 [181 N.E.2d 436]. See also Restatement Second of Conflicts of Laws, section 314, reporter’s note, comment i at page 364 (1971). And the result in Keck now has statutory support in Probate Code section 721, which became effective after Keck was filed.
The parallelism between the New York and California law does not, however, end with that between Matter of Riggle’s Estate and Keck v. Superior Court. Both states have declared the rule that “a debt which is uncertain and contingent in the sense that it may never become due and payable is not subject to garnishment.” (Clecak v. Dunn (1928) 95 Cal. App. 537, 540 [272 P. 1104]; Dawson v. Bank of America (1950) 100 Cal.App.2d 305, 309 [223 P.2d 280]; Stein, Jurisdiction by Attachment of Liability Insurance (1968) 43 N.Y.U. L.Rev. 1074, 1078.) Nevertheless, both states have allowed the attachment of proceeds of insurance policies even before the proof of loss has been filed. (Compare Baumgold Bros. v. Schwarzschild Bros. (1949) 276 App.Div. 158 [93 N.Y.S.2d 658], affirmed (1951) 302 N.Y. 628 [97 N.E.2d 357], and Brainard v. Rogers (1925) 74 Cal.App. 247 [239 P. 1095].) The distinction is between the situation where “obligation is uncertain and contingent in the sense that it may never become due and payable,” and that where the contingency relates only to the amount of the garnishee’s liability. “Where there is no contingency as to the garnishee’s liability, the only contingency being as to the amount thereof, and where the amount of. the liability is capable of definite ascertainment in the future, there is no such contingency, as prevents garnishment of the claim, even though, it has been held, it may be that eventually it will be found that nothing is due.” (Brunskill v. Stutman (1960) 186 Cal.App.2d 97, 104, 105 [8 Cal.Rptr. 910]; and see Hustead v. Superior Court (1969) 2 Cal.App.3d 780, 786-787 [83 Cal.Rptr. 26] (future rents not gamishable in either California or New York, because they may never become due).) Here it has been conceded *Supp. 22 that the obligation of the insured to defend became due on the filing of the suit. The fact that the insurer may defend successfully, i.e., “It may be that eventually it will be found that nothing is due,” does not prevent garnishment. (On a contrary rule as promoting collusion between the insurer and insured see Baumgold Bros. v. Schwarzschild Bros., supra.)
Our attention has been directed to several cases rejecting Seider, and we have found several more. These cases do not hold that there is no jurisdiction in the constitutional sense. Rather they hold that the obligation due from the insurer to the defendant cannot be attached. (Jardine v. Donnelly (1964) 413 Pa. 474 [198 A.2d 513] (prt-Seider perfunctory opinion); Housley v. Anaconda Company (1967) 19 Utah 2d 124 [127 P.2d 390] (post-Seider but does not cite it); DeRentiis v. Lewis (1969) 106 R.I. 240 [258 A.2d 464] (not “property” within Rhode Island statute); Howard v. Allen (1970) 254 S.C. 455 [176 S.E.2d 127] (distinguishes New York from South Carolina attachment statutes); Government Employees Insurance Company v. Lashy (Mo.App. 1970) 454 S.W.2d 942 (“contingent” under Missouri statute); Ricker v. Lajoie (D.Vt. 1970) 314 F.Supp. 401 (“contingent” under Vermont statute); Kirchman v. Mikula (La.App. 1972) 258 So.2d 701 (interpretation of Louisiana “direct action” statute),) None of these cases discloses statutes as broad as that in California or a course of interpretation similar to that here. Nor do they reveal the sort of independent parallelism between their local law and New York law like that between California and New York.
The respondent claims that allowing the garnishment violates Insurance Code section 11580, which he says “forbids direct actions against insurers.” There are at least three answers to this contention: (1) This is not a direct action against the insurer, because it is not an action against the insurer. The action is against the defendant, Evers, and the insurer is not a party, it is only a garnishee. (Clyne v. Easton, Eldridge & Co., supra, 148 Cal. at p. 295; Minichiello v. Rosenberg, supra, 410 F.2d at p. 109; Simpson v. Loehmann, supra, 234 N.E.2d at pp. 671-672.) (2) Section 11580 does not forbid direct actions. (3) Even if section 11580 forbids direct actions in general, Code of Civil Procedure section 544 makes the insurer garnishee directly liable to the plaintiff. Only the second and third points need discussion.
Insurance Code section 11580 allows rather than forbids direct actions against insurers. In form section 11580, subdivision (b), is a statement of the minimum provisions that must be included in all liability insurance policies issued in this state. It creates an exception to the rule that the policy itself may forbid a direct action. (Girard v. Coml. Standard Ins. *Supp. 23 Co. (1944) 66 Cal.App.2d 483, 488 [152 P.2d 509].) Apart from the reference to the “liability insurer’s contractual obligation to defend” in the plaintiffs’ request for the writ of attachment, there is no indication in the record that this case involves a liability policy. Nor is there any indication where the policy Was issued, let alone that it was issued in California. But because of the way the case has been presented both to the municipal court and to us, we assume that the policy is a liability policy within the meaning of Insurance Code sections 108 and 11580, and that the applicable law, whatever it may be, is the same as that of California. (Evid. Code, §311, subd. (a); Witkin, Cal. Evidence (2d ed. 1966) § 173 at p. 159; id. 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § § 281, 285.) Section 11580, subdivision (b), provides' in relevant part that when “a judgment is secured against the insured ... in an action based upon . . . property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment.” Its obvious intent is to put insurers under a greater burden than other obligees of the insured by making the insured’s judgment creditors third party beneficiaries under the policy and thus expedite their recovery. (Johnson v. Holmes Tuttle Lincoln-Merc. (1958) 160 Cal.App.2d 290, 298 [325 P.2d 193].) There is nothing in section 11580, subdivision (b), to indicate that it was intended to exempt insurers from garnishment and thus give them a benefit that other obligors of the insured do not enjoy.
The respondent repeatedly cites the reversed opinion in State Farm Fire & Cas. Co. v. Tashire (9th Cir. 1966) 363 F.2d 7, reversed (1967) 386 U.S. 523 [18 L.Ed.2d 270, 87 S.Ct. 1199], for the proposition that the insurer cannot be sued before judgment against the insured and, therefore, cannot be garnished. The Supreme Court held, however, that whether or not the insurer was liable before judgment against the insured, it was even before such judgment sufficiently exposed to liability to invoke the federal interpleader jurisdiction. (386 U.S. at pp. 531-534 [18 L.Ed. 2d at pp. 275-277].) Justice Douglas’ dissent is instructive. “Understandably, the insurance company wants the best of two worlds. It does not want an action against it until judgment against its insured. But, at the same time it wants the benefits of the interpleader statute.” (386 U.S. at p. 541 [18 L.Ed.2d at p. 281].) Now that the insurer has the benefit of the interpleader statute, it does not behoove us to implement this “heads I win, tails you lose” proposition, by giving insurers more favorable treatment than other garnishees. Even that dedicated opponent of Seider, Professor Siegel, who was well aware of New York Insurance Law section 167, the counterpart of our section 11580, has not suggested that it was
*Supp. 24 an obstacle to the decision. (N.Y. Civ. Pract. Laws & Rules, § 5201, 1968 Com. pt. IV, f 92 (McKinney Supp. (1972) at p. 51).)
Insurance Code section 11580, subdivision (b), must be read together with Code of Civil Procedure section 544. Section 544 provides that the garnishee “shall be . . . liable to the plaintiff for the amount of such credits, property or debts,” until the writ is discharged or the judgment satisfied. It makes the garnishee directly liable to the attaching creditor. (Boyle v. Hawkins (1969) 71 Cal.2d 229, 238-239 [78 CalRptr. 161, 455 P.2d 97].) Since section 11580, subdivision (b), does not refer to garnishments, we should not expand it to nullify the application of section 544 to insurers.
Both sides argue that policy favors their position. The respondent says that Seider “would totally upset traditional concepts of jurisdiction; and it would then expose defendants to jurisdiction and appeal in locations thousands of miles from their homes for minor contractual claims. . . .” Of course, this is an overstatement in that defendants are “exposed to jurisdiction” only to the extent of the assets attached. As in Minichiello no one here contends that a judgment in this case could be enforced against any other assets. (410 F.2d at pp. 110-111.) The balance of the argument amounts only to an assertion that Harris v. Balk is wrong. (Minichiello V. Rosenberg, supra, 410 F.2d at p. 118.)
The appellants argue that their claim is so small that in effect they would be denied a remedy if they cannot maintain their action here. This, of course, may be true. And the state does have an interest in protecting its residents that is reflected in the “ ‘movement away from the bias favoring the defendant . . . toward permitting the plaintiff to insist that the defendant come to him.’ ” (Minichiello v. Rosenberg, supra, 410 F.2d at p. 110.) This movement in favor of plaintiffs is, of course, apparent here from the adoption of the new act on jurisdiction and service of process.
However, there is no reason to attempt to reconcile the competing policies by now setting up a flat rule on an a priori basis. Of course, there is an obvious and real danger in cases of this sort that there may be an “overly enthusiastic but not unconstitutional assertion of jurisdiction . . .” (Minichiello v. Rosenberg, supra, 410 F.2d at p. 119.) But in this state the danger has been minimized by the statutory recognition of a flexible form of the doctrine of forum non conveniens. (Code Civ. Proc., § 410.30.) Granting that the state has a strong interest in providing a forum for its *Supp. 25 residents, California has not adopted the former New York rule that “a forum non conveniens dismissal is never permissible if either plaintiff or defendant resides in the forum state.” (Thomson v. Continental Ins. Co. (1967) 66 Cal.2d 738, 743 [59 Cal.Rptr. 101, 427 P.2d 765].) Instead it has recognized that a dismissal may be granted in such a case in “unusual circumstances,” id. 66 Cal.2d at page 745. As the Judicial Council stated in its comments to section 410.30, “domicile of plaintiff would ordinarily preclude” a dismissal, Li, Attorney’s Guide to California Jurisdiction and Process, supra, section 1.8 at page 41, i.e., there may be extraordinary cases where the motion would be granted even though the plaintiff is a resident. New York has recently relaxed its rule, responding to a degree to the criticisms of Seider and recognizing that the expansion of the bases of jurisdiction “requires a greater degree of forbearance in accepting suits which have but minimal contact with New York.” (Silver v. Great American Insurance Company (1972) 29 N.Y.2d 356 [328 N.Y.S.2d 398, 278 N.E.2d 619, 622].) We believe that this forbearance is included in Code of Civil Procedure section 410.30.
We, of course, have no way of knowing whether this suit should be dismissed or stayed on grounds of an inconvenient forum. No motion was ever made. It may now be too late to make such a motion, Code of Civil Procedure section 418.10, subdivision (a)(2), unless the defendant appears generally thereby obviating any jurisdictional problem. (Id. § 410.30, subd. (b), as added by Stats. 1972, ch. 601, § 1.) But the defendant’s failure to take advantage of his right to seek relief under section 410.30 is not a reason either to truncate the bases of jurisdiction or to abandon the existing interpretations of our attachment statutes'.
The order of July 18, 1972, quashing service of summons and, in effect, quashing the attachment is reversed.
DeCristoforo, J., and Puglia, J., concurred.

The respondent argues that “the real crux of the case” is whether the insurer’s obligation under the policy is a debt. “If the policy is indeed a ‘debt,’ then presumably, it can be garnished and attached like any other debt and quasi in rem juris *Supp. 19 diction exists; if it is not, there is no quasi in rem jurisdiction.” He concludes that the obligation is not a “debt,” and states, “the key to in rem or quasi in rem jurisdiction by attachment is the existence of a ‘debt’ owing defendant. If the insurance policy herein is not a ‘debt’ there is no jurisdiction.”